473 F.2d 589
 11 Fair Empl.Prac.Cas. 1271,
20 Wage & Hour Cas. (BN 1100,
5 Empl. Prac. Dec. P 8434, 70 Lab.Cas. P 32,841
 James D. HODGSON, Secretary of Labor, United States
Department of Labor, Appellant and Cross-Appellee,
v.
ROBERT HALL CLOTHES, INC., a corporation, and Robert Hall
Clothes Greenbank Road Corp., a corporation,
Appellees and Cross-Appellants.
 Nos. 71-1985, 71-1986.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 4, 1972.
Decided Feb. 5, 1973.
 
 Richard F. Schubert, Sol. of Labor, Carin Ann Clauss, Associate Sol., Sylvia S. Ellison, Caruthers G. Berger, Attys., United States Department of Labor, Washington, D. C., Louis Weiner, Regional Solicitor, Philadelphia, Pa., Potter, Anderson & Corroon, Wilmington, Del., for Robert Hall Clothes, Inc., and Robert Hall Clothes Greenbank Road Corp.; David F. Anderson, Robert K. Payson, Wilmington, Del., and Stroock & Stroock & Lavan, Milton N. Scofield, Martin D. Eile, Henry J. Silberberg, of counsel.
 Weil, Gotshal & Manges, New York City, for National Retail Merchants Ass'n, as amicus curiae.
 Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge.
 
 
 1
 This case involves the application of the Equal Pay Act of 1963, 29 U.S.C. Sec. 206(d)(1) (1964). In view of the district court's well-written opinion reported at 326 F.Supp. 1264 (D.Del.1971), we will not elaborate on the facts.
 
 
 2
 The Robert Hall store in question is located in Wilmington, Delaware. It sells clothing, and contains a department for men's and boys' clothing and another department for women's and girls' clothing. The store is a one-floor building, and the departments are in separate portions of it.
 
 
 3
 The merchandise in the men's department was, on the average, of higher price and better quality than the merchandise in the women's department; and Robert Hall's profit margin on the men's clothing was higher than its margin on the women's clothing. Consequently, the men's department at all times showed a larger dollar volume in gross sales, and a greater gross profit.[1] Breaking this down, the salespeople in the men's department, on the average, sold more merchandise in terms of dollars and produced more gross profit than did the people in the women's department per hour of work.[2]
 
 
 4
 The departments are staffed by full and part-time sales personnel. At all times, only men were permitted to work in the men's department and only women were permitted to work in the women's department. The complaint is not addressed to the propriety of such segregated employment.
 
 
 5
 The salespeople receive a base salary and can earn additional incentive payments. Various factors relating to the garment sold determine the amount of incentive payments.[3] At all times, the salesmen received higher salaries than the saleswomen. Both starting salaries and periodic increases were higher for the males. The amount of incentive compensation was very slightly greater for the men.[4]
 
 PROCEDURAL HISTORY
 
 6
 The Secretary of Labor brought this action against Robert Hall in 1966, pursuant to 29 U.S.C. Sec. 217, claiming that since June 13, 1964 Robert Hall had been discriminating against the saleswomen on the basis of sex because it compensated them less than it compensated salesmen even though the saleswomen and the salesmen were performing equal work. If proven, this was a violation of 29 U.S.C. Sec. 206(d)(1).[5]
 
 
 7
 After a trial in late 1970, the district court filed its opinion on April 16, 1971. The court found that Robert Hall had a valid business reason for segregating its sales personnel, i.e., "the frequent necessity for physical contact between the sales persons and the customers which would embarrass both and would inhibit sales unless they were of the same sex." Hodgson v. Robert Hall, supra at 1269. However, it also found that this does not affect the application of the Equal Pay Act. It proceeded to hold that the sales personnel of each department performed equal work within the meaning of Sec. 206(d)(1).
 
 
 8
 The question then facing it was whether Robert Hall could prove that the wage "differential was based on any other factor other than sex." 29 U.S.C. Sec. 206(d)(1)(iv). Robert Hall contended that its wage differentials were based on economic factors, i.e., the higher profitability of the men's department allowed it to pay the men more, and the lower profitability of the women's department forced Robert Hall to pay the workers in that department less. In support of this contention, Robert Hall introduced evidence of sales and profit margins from which the district court was able to make the findings in the tables previously quoted.
 
 
 9
 The district court accepted Robert Hall's contention that economic benefit to the employer could be a factor other than sex on which a wage differential could be based. But it decided that the figures for the average performance of each department were not sufficient to meet Robert Hall's burden of proof. The court held that the relevant figures were those relating to the economic benefit produced by each individual sales person. Although Robert Hall in the ordinary course of business retained no records from which such performance could be calculated, fortuitously there were records available for two ten week periods out of the six years involved in this suit. Based on this evidence, the court compared the performances of the full-time male to the performances of the full-time female and compared the performances of the part-time males to those of the part-time females.[6] It found that the full-time male was responsible for more dollar sales per hour of work than was the full-time female. In regard to the part-time personnel, the court found:
 
 
 10
 "Two of Greenbank's part-time female employees, Alice Baker and C. Jarrell, were responsible for a higher per hour dollar volume of sales than three of the part-time male employees, McGonegal, Law and Layton, during the period from August 10, 1969 to October 18, 1969. A division of Jarrell's gross earnings (less incentive) by hours worked and a similar computation for the part-time salesmen discloses that Jarrell received a lower hourly rate than all three of these part-time salesmen, even though her gross sales per hour were more than that made by three of the five part-time salesmen."[7] Hodgson v. Robert Hall, supra at 1278.
 
 
 11
 On the basis of these findings, the district court held that the wage differential in favor of the part-time salesmen was not "supported by any economic benefits which defendants received from the job performances of the salesmen." Id. at 1278. Accordingly, it found in favor of the secretary as to the part-time personnel (and awarded them back wages) and in favor of Robert Hall as to the full-time personnel. It also found that the incentive compensation system was based on the kind of item sold and that this was a "factor other than sex." Therefore, it held against the Secretary on this point. In addition, it denied interest on its award in favor of the part-time personnel.
 
 
 12
 This disposition left no one completely satisfied. The Secretary appeals from the decision adverse to the full-time female personnel and against the award of interest, and Robert Hall appeals from the decision in favor of the part-time female personnel. The Secretary decided not to appeal from the holding that the incentive system was based on a factor other than sex.
 
 
 13
 "ANY OTHER FACTOR OTHER THAN SEX"
 
 
 14
 The initial question facing us is one raised by the Secretary. He contends that economic benefit to the employer cannot be used to justify a wage differential under Sec. 206(d)(1)(iv).
 
 
 15
 He argues that "any other factor" does not mean any other factor. Instead he claims it means any other factor other than sex which "is related to job performance or is typically used in setting wage scales." He contends that economic benefits to an employer do not fall within this exception.[8]
 
 
 16
 He recognizes that the men's department produces a greater profit for Robert Hall. His contention is that the salesmen have nothing to do with producing this benefit since the district court found that the salesmen and saleswomen performed equal work. Since the saleswomen cannot sell the higherpriced clothing sold in the men's department, this cannot be used as a factor on which to base a wage differential. Otherwise, "the exception could swallow the rule." Shultz v. First Victoria National Bank, 420 F.2d 648 (5th Cir. 1969).
 
 
 17
 Robert Hall does not argue that "any other" means "any other" either. It claims that a wage differential is permissible if based on a legitimate business reason. As the district court found, economic benefits could justify a wage differential. We need go no further than to say the district court was correct to hold in this case that economic benefits to an employer can justify a wage differential.
 
 
 18
 The Secretary's argument is incorrect for several reasons. It ignores the basic finding of the district court that Robert Hall's segregation of its work force was done for legitimate business purposes. It is also inconsistent with the wording of the statute.
 
 
 19
 In providing for exceptions, the statute states that they will apply when the males and females are doing equal work. Congress thus intended to allow wage differentials even though the contrasted employers were performing equal work. However, two of the examples given as exceptions, (Sec. 206(d)(1)(ii and (iii)), may be read to say that the contrasted employees really are not performing equal work. If, for example, some employees produce a greater quantity of work than others, pursuant to Sec. 206(d)(1)(iii), they may receive greater compensation.
 
 
 20
 The Secretary's test might be acceptable if Secs. 206(d)(1)(ii) and (iii) stood alone. However, Secs. 206(d)(1)(i) and (iv) indicate that there must be some factors upon which an employer may base a wage differential which are not related to job performance. We must point to the plain wording of the clause. It reads "any other factor . . . ." While the examples preceding Sec. 206(d)(1)(iv) necessarily qualify it to some extent, they do not narrow it to the degree for which the Secretary contends.
 
 
 21
 The Secretary recognizes this reasoning in Sec. 800.116(e) of his Wage-Hour Administrator's Interpretative Bulletin and Sec. 34d07 of his Field Office Handbook. In both of these the Secretary approves a commission system in which the amount of compensation is determined by the type of article sold.[9] The stated hypothesis is that the sales people are performing equal work. Since this is given, the only basis for approving such a system has to be that the economic benefit to the employer is greater. As the Field Office Handbook states, "Such a difference in commission rates might be based on many factors such as sales volume, markup, cost of the items sold, type of merchandise sold, turnover in merchandise, and the ease of selling merchandise in each particular department." These are all factors of value to the employer. It might take no more effort or skill to sell two different pairs of ten dollar shoes; but if the employer makes a four dollar profit on one pair as opposed to a two dollar profit on the other, the Secretary apparently allows a higher commission rate. That the salary in this case is a base salary rather than a commission is not a significant distinction. The principle remains the same: the compensation is based on economic benefit to the employer, and the work performed is equal.
 
 
 22
 This would make good business sense. The saleswomen are paid less because the commodities which they sell cannot bear the same selling costs that the commodities sold in the men's department can bear. Without a more definite indication from Congress, it would not seem wise to impose the economic burden of higher compensation on employers. It could serve to weaken their competitive position. If anything, the legislative history supports a broader reading of Sec. 206(d)(1)(iv) than that proposed by the Secretary.
 
 
 23
 Representative Goodell, a key sponsor of the Act, said:
 
 
 24
 ". . . [T]here are many factors that can be taken into consideration in working out differentials of pay among employees . . . which would be proper under this legislation so long as they were based on those factors and not on the basis of whether employees are women or men." 109 Cong.Rec. 9206.
 
 
 25
 ******
 
 
 26
 * * *
 
 
 27
 "If he [the employer] has a reasonable standard of differentiation, the Labor Department is not to come in, even, and judge the reasonableness or unreasonableness of this differentiation among employees, except as it shows a clear pattern of discrimination against sex." 109 Cong.Rec. 9208 (1963).
 
 Rep. Griffin stated:
 
 28
 "I should like to focus the attention of the gentleman upon roman numeral iv, at the top of page 3 which makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate this legislation. In other words, even though jobs involve the same skill, equal effort, equal responsibility, and are performed under the same working conditions, if there is any other factor not based on sex upon which a differential is based, then no violation of this law can be found. Roman numeral iv is a broad principle, and those preceding it are really examples: such factors as a seniority system, a merit system, or a system which measures earnings on the basis of quality or quantity of production. The other body saw fit to leave out references in the bill to a merit system, a system which measures on the basis of quality and quantity, and a seniority system, and included only the broad language found in roman numeral iv of our bill. However, it should be clear that under either bill a wage differential based upon any factor other than sex is not a violation." 109 Cong.Rec. 9203 (1963) (Rep. Griffin, R., Mich.) (emphasis supplied)
 
 And the House Committee report states:
 
 29
 "Three specific exceptions and one broad general exception are also listed. It is the intent of this committee that any discrimination based upon any of these exceptions shall be exempted from the operation of this statute. As it is impossible to list each and every exception, the broad general exclusion has been also included." H. Rept. 309, 88th Cong., 1st Sess. U.S.Code Cong. and Adm. News, p. 689 (1963).
 
 
 30
 Our decision in Shultz v. Wheaton Glass Co., 421 F.2d 259 (3d Cir. 1970), cert. denied 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970) also lends support to this result. In discussing whether the employer had met his burden of proving an exception to this act, we held against the employer partly because the record did not show that he had realized any greater economic benefits from certain additional activities allegedly performed by the male employees. While we did not specifically consider the issue of whether "economic benefit" falls under the act, the decision implicitly accepts the fact that it does. Shultz v. Wheaton Glass Co., supra, at 267.
 
 
 31
 In addition, this case comes to us on a finding by the district court that "the jobs performed by salesmen and salesladies, respectively, are not reasonably susceptible of performance by both sexes because of the nature of the jobs." Hodgson v. Robert Hall Clothes, Inc., supra at 1269. Although the fact that the jobs in question require employment of one sex exclusively may not alone justify a wage differential, it does seem to be a factor that can be considered in evaluating the employer's justification for his differential.
 
 
 32
 The Secretary claims that his test is required by the Supreme Court's decision in Griggs v. Duke Power Co., Inc., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In Griggs, the Supreme Court interpreted Title VII of the Civil Rights Act to mean that if a job requirement operates to exclude a disproportionate number of blacks and the jobs in question formerly had been filled only by white employees as part of a longstanding practice of giving preference to whites, then the employer must show that the requirement is related to successful job performance to be able to use it. Although the Civil Rights Act and the Equal Pay Act are in pari materia, Shultz v. Wheaton Glass Co., supra at 266, Griggs is not applicable to this case. Robert Hall's segregation of its sales force was related to job performance, as found by the District Court. The Secretary does not contend that the segregation is impermissible, but only that the pay must be equal. Griggs did not deal with justification of a wage differential and this is the issue we are considering.
 
 BURDEN OF PROOF
 
 33
 The next question is whether Robert Hall proved that it received the economic benefits upon which it claimed it based its salary differentials. It is well-settled that the employer has the burden of proof on this issue. E.g, Shultz v. Wheaton Glass Company, supra at 266.
 
 
 34
 Robert Hall introduced evidence to show that for every year of the store's operation, the men's department was substantially more profitable than the women's department. See tables on pg. 591.
 
 
 35
 Robert Hall contends that this greater profitability is a sufficient reason to justify paying the sales people in its men's department more than it pays the salespeople in its women's department. It does not have to tie its compensation scheme into the performance of the individual sales person, and this is what the district court implicitly required.
 
 
 36
 We agree that the district's court's opinion implies that such a correlation is necessary. It compared the individual performances of the full-time male and the full-time female. It also compared the individual performances of the part-time workers. Hodgson v. Robert Hall Clothes, Inc., supra at 1278, 1280. See page 593 of this opinion. As we have mentioned, it was not Robert Hall's practice to retain records of individual performance. Fortuitously, the district court had before it the records of only two ten-week periods out of the six years in question here. Robert Hall questions the propriety of the district court's relying at all on these figures. It claims that these figures: (1) do not constitute a sufficient amount of evidence on which to base a finding; and (2) are not a representative sample.
 
 
 37
 Of course, it is the employer's burden to prove justification. Therefore, if the district court was correct in implicitly requiring Robert Hall to correlate wages with individual performance, Robert Hall cannot complain that there was not sufficient evidence available. This same reasoning applies to Robert Hall's complaint that the sample was not representative. Additionally, it does not seem unreasonable to us that in any comparison of individuals in these groups that there might be some saleswomen who had better statistics in some areas than some males had.[10] The question is whether the Equal Pay Act requires the employer to justify his base salary by correlating it to individual performance.
 
 
 38
 The overwhelming evidence which showed that the men's department was more profitable than the women's was sufficient to justify the differences in base salary. These statistics proved that Robert Hall's wage differentials were not based on sex but instead fully supported the reasoned business judgment that the sellers of women's clothing could not be paid as much as the sellers of men's clothing. Robert Hall's executives testified that it was their practice to base their wage rates on these departmental figures.
 
 
 39
 While no business reason could justify a practice clearly prohibited by the act, the legislative history set forth above indicates a Congressional intent to allow reasonable business judgments to stand. It would be too great an economic and accounting hardship to impose upon Robert Hall the requirement that it correlate the wages of each individual with his or her performance. This could force it toward a system based totally upon commissions, and it seems unwise to read such a result into Sec. 206(d)(1)(iv). Robert Hall's method of determining salaries does not show the "clear pattern of discrimination," (Rep. Goodell, 109 Cong.Rec. 9203), that would be necessary for us to make it correlate more precisely the salary of each of its employees to the economic benefit which it receives from them. Robert Hall introduced substantial evidence. This is not a case where if we sustain the proof as justification for a wage differential "the exception will swallow the rule." Shultz v. First Victoria National Bank, 420 F.2d 648, 656, 657 (5th Cir. 1969).
 
 
 40
 The Secretary contends that our decision in Shultz v. Wheaton Glass Company, supra, supports the district court's decision not to rely on group averages to justify the wage differential. Cf. Hodgson v. Brookhaven General Hospital, 436 F.2d 719, 725 (5th Cir. 1970) and Shultz v. American Can Co., 424 F.2d 356, 358, 360-61 (8th Cir. 1970). We do not agree that Wheaton supports the district court. In that case the question, in part, was whether additional duties allegedly performed by certain males would justify paying males more than females. The courts held that the employers had failed to show that all of the males performed the additional duties. Here all of the salesmen perform the same duties. One could analogize to Wheaton Glass and say that as the alleged justification there was the additional duties, the alleged justification here is the economic benefits. And as the employer there did not prove that each individual performed the duties here Robert Hall did not prove that each individual provided economic benefits. However, the nature of the proof required distinguishes the two cases. It would not have been difficult in Wheaton for the employer to have proved that each or most male workers performed the additional duties. That is not the case here.
 
 
 41
 Also, in Wheaton Glass, the court relied on the fact that there had been no finding that the women workers could not perform the additional duties allegedly performed by the men. Here there was a specific finding by the district court, unchallenged by the Secretary, that the women could not perform the work done by the men.
 
 
 42
 Since we have determined that Robert Hall has not violated Sec. 206(d)(1), we find it unnecessary to reach the question of whether the district court was correct in not awarding interest in this case.
 
 
 43
 The decision of that court will be affirmed as to the full-time personnel and reversed as to the part-time personnel.
 
 
 44
 VAN DUSEN, Circuit Judge (dissenting).
 
 
 45
 I respectfully dissent, since I believe the following findings of fact of the district court are not clearly erroneous:[1]
 
 
 46
 "After listening to voluminous nonexpert testimony for days on end concerning the differences and similarities between the jobs of salesmen and salesladies, the conclusion is warranted that such differences as existed were at best only incidental to the job of each when considered in its totality. The skill, effort and responsibility of each were substantially equal.
 
 
 47
 "Plaintiff has borne the burden of proving by a preponderance of the evidence that defendants have discriminated between salesmen and salesladies by paying to the latter wages at a lesser rate than paid to the former for equal work on jobs that required equal skill, effort and responsibility. Plaintiff has thus made out a prima facie case against defendant for violating the Equal Pay Act. Shultz v. Wheaton Glass Co., supra, p. 266."
 
 
 48
 Hodgson v. Robert Hall Clothes, Inc., 326 F.Supp. 1264, 1275 (D.Del.1971).
 
 
 49
 "The conclusion is warranted that the compensation disparity (apart from incentives) in favor of the part-time salesmen cannot be supported by any economic benefits which defendants received from the job performances of the salesmen. The difference in wage rates paid to the salesmen and saleswomen was not based upon factors other than sex."[2] Hodgson, supra, at 1278.
 
 
 50
 As this court stated in Shultz v. Wheaton Glass Company, 421 F.2d 259, 266-267 (3d Cir. 1970):
 
 
 51
 "Under the statute, the burden of proof thereupon fell on the company to prove its claim that it came within exception (IV).[3]
 
 
 52
 ******
 
 
 53
 * * *
 
 
 54
 "The burden of showing this properly rested on the company, for it invoked the defense that the differential was based on a factor other than sex. In cases such as this, where the justification for the differential rests on economic benefits, the company has peculiarly within its knowledge the means of proof, and the burden therefore is one which cannot be satisfied by general or conclusory assertions.
 
 
 55
 ******
 
 
 56
 * * *
 
 
 57
 "We are, of course, bound by findings of fact unless they are clearly erroneous."
 
 
 58
 I would affirm the district court's order of April 16, 1971, except for the provision denying interest on back pay. See Hodgson v. American Can Company, 440 F.2d 916 (8th Cir. 1971); cf. Hodgson v. American Bank of Commerce, 447 F.2d 416 (5th Cir. 1971).
 
 
 
 [1]
 The following table from the district court's opinion is instructive:
 Re: Greenbank Road Store
 Schedule of Sales and Gross Profits by Department
-------------------------------------------------------------------------------
 Men's and Boys' Clothing Dept.Ladies' and
 Girls' Clothing Dept.
 ---------------------------------- --------------------------------
Fiscal Sales Gross Gross Sales Gross Gross
 Year Profit Profit Profit Profit
 Ended % %
 June 30
-------------------------------------------------------------------------------
1963 $210,639.48 $ 85,328.48 40.51 $177,742.- $58,547.13 32.92
 17
1964 178,867.50 73,608.08 41.16 142,788.22 44,612.12 31.24
1965 206,472.93 89,930.00 43.55 148,252.90 49,608.08 33.46
1966 217,765.79 97,447.54 44.74 166,479.47 55,463.29 33.31
1967 244,922.09 111,498.79 45.52 206,680.27 69,190.04 33.47
1968 263,663.53 123,681.60 46.90 230,156.63 79,846.92 34.69
1969 316,242.41 148,001.30 46.79 254,379.22 92,686.87 36.43
Hodgson v. Robert Hall Clothes, Inc., 326 F.Supp. 1264, 1276 (Del. D.C. 1971).
 
 
 [2]
 
 Schedule of Hourly Sales, Earnings, and Gross Profit
 Year Sales Per Excess M Earnings Excess M Gross Excess M
 Hour over F Per Hour over F Profit over F
 Per Hour
 Men's &
 Boys'
 1963 38.31 40% 2.18 25% 15.52 72%
 1964 40.22 32% 2.46 32% 16.55 74%
 1965 54.77 64% 2.67 48% 23.85 114%
 1966 59.58 73% 2.92 50% 26.66 134%
 1967 63.14 71% 2.88 45% 28.74 133%
 1968 62.27 70% 2.97 47% 29.21 127%
 1969 73.00 77% 3.13 45% 34.16 127%
 Ladies' &
 Girls'
 1963 27.31 1.75 9.00
 1964 30.36 1.86 9.49
 1965 33.30 1.80 11.14
 1966 34.31 1.95 11.43
 1967 36.92 1.98 12.36
 1968 37.20 2.02 12.91
 1969 41.26 2.16 15.03
 Hodgson v. Robert Hall Clothes, Inc., supra at 1277.
 
 
 [3]
 These factors included style, quality, price, mark-up, and ease of selling specific merchandise involved. Hodgson v. Robert Hall, Inc., supra at 1272, 1278
 
 
 [4]
 "The net effect of the incentive system, however, resulted in a ratio of incentive pay to gross sales which was approximately .2% more in the case of men than women." Hodgson v. Robert Hall, Inc., supra at 1272
 
 
 [5]
 That section provides:
 "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee." 29 U.S.C. Sec. 206(d)(1) 1964.
 
 
 [6]
 At the times covered by the record, there was only one full-time sales person of each sex. For the first ten-week period there were five part-time males and four part-time females. For the second, five males and three females
 
 
 [7]
 Robert Hall claims that dollar volume of sales is not the most significant statistic. The most important statistic to it is the profit produced by the employee. While it is logical to assume that the salesmen could have produced more profit despite making fewer gross sales because of the higher profit margins on men's clothing, this statistic was not capable of calculation using the evidence available
 
 
 [8]
 It would not be unreasonable to believe that economic benefit to the employer is a factor "typically used in setting wage scales" so that even the Secretary's test is passed. There was no proof on this below, however, because it appears that this is the first time the Secretary has offered this as a test. Then even if we were to accept the Secretary's test, it would seem only fair to send this case back to the district court for proof on this issue. The lack of notice to Robert Hall is evidenced in the way the Secretary proposed this test on this appeal. In his main brief, he stated his test to be "a factor . . . related to job performance." When Hobert Hall pointed out that Sec. 206(d)(1)(i), which permits a wage differential to be based on seniority, does not necessarily relate to job performance, the Secretary added the "or is typically used" language to his reply brief
 
 
 [9]
 The Bulletin states:
 "Sec. 800.116(e) Commissions. The establishment of different rates of commission on different types of merchandise would not result in a violation of the Equal Pay provisions where the factor of sex provides no part of the basis for the differential. For example, suppose that a retail store maintains two shoe departments, each having employees of both sexes, that the shoes carried in the two departments differ in style, quality and price, and that the male and female sales clerks in the one department are performing 'equal work' with those in the other. In such a situation, a prohibited differential would not result from payment of a lower commission rate in the department where a lower price line with a lower markup is sold than in the other department where the merchandise is higher priced and has a higher markup, if the employer can show that the commission rates paid in each department are applied equally to the employees of both sexes in the establishment for all employment in that department and that the factor of sex has played no part in the setting of different commission rates." (519-20)
 The Handbook reads:
 "34d07 Commissions. IB 800.116(e) provides that the establishment of different rates of commission on different types of merchandise will not result in a violation of Sec 6(d) where the factor of sex provides no part of the basis for the differential. Thus, even though it is determined that salesmen and saleswomen are performing equal work in selling different merchandise in different departments the employer would not be in violation of Sec 6(d) by paying different rates of commission on different merchandise where he can show that the differential is based on factors other than sex. Such a difference in commission rates might be based on many factors such as sales volume, markup, cost of the items sold, type of merchandise sold, turnover in merchandise, and the ease of selling merchandise in each particular department. If the employer applies such criteria in the same manner to employees of both sexes, the differential in rates would be based on factors other than sex." (488) (Emphasis added).
 
 
 [10]
 See footnote 7
 
 
 [1]
 See Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972). I agree with the first 11 pages of the majority opinion
 
 
 [2]
 This language follows immediately after these basic findings:
 "The wage compensation disparity between part-time salesmen and part-time saleswomen, excluding from consideration incentive payments, presents a different story. The part-time salesmen for the period January 26, 1969 to April 15, 1969 on the average were responsible for $44.79 of sales per hour as against $37.47 by saleswomen, or 20% more. The average part-time salesman was paid $1.93 per hour in wages as against $1.61 per hour to part-time saleswomen, or 20% more. For the period August 10, 1969 to October 18, 1969 the part-time salesmen generated on the average 46.43 dollars of sales per hour as against 43 dollars by saleswomen, or 8% more. The average salesman was paid during the period $1.91 per hour in wages as against $1.65 per hour to saleswomen, or 16% more.
 "In the case of part-time sales personnel no records of sales per hour were introduced in evidence for periods of time other than the two discussed. There is no suggestion that there was a deliberate destruction of records by defendants other than in the normal course of business. It is reasonable to infer that had the records been available their disclosure would not have been significantly different from that shown by the analysis of Dx 20-23, just discussed."
 
 
 [326]
 F.Supp. at 1278
 
 
 [3]
 "[A] differential based on any other factor other than sex." See 29 U.S.C. Sec. 206(d) (1) (iv)