**W. J. USERY, Secretary of Labor [Successor to John T. Dunlop Resigned], United States Department of Labor, Plaintiff,**

**v.**

**Willard RICHMAN, Individually and Richman-Anderson, Inc., a corporation, trading as Tower View Cafe, Defendants.**

**Civ. No. A3–75–16.**

United States District Court,
D. North Dakota,
Southeastern Division.

June 21, 1976.

Harold O. Bullis, U. S. Atty., Fargo, N. D., U. S. Dept. of Labor, William J. Kilberg, Solicitor of Labor, T. A. Housh, Jr., Reg. Solicitor, Washington, D. C., Henry C. Mahlman, Assoc. Reg. Solicitor, Ann M. Noble, Attorney, Office of the Solicitor, Denver, Colo., for plaintiff.

Frank J. Magill, Nilles, Hansen, Selbo, Magill & Davies, Fargo, N. D., for defendants.

## MEMORANDUM OF DECISION AND ORDER

BENSON, Chief Judge.

This is an action instituted by the Secretary of Labor, United States Department of Labor, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*, for alleged violations of the Equal Pay Act, 29 U.S.C. § 206(d), in that Defendants allegedly paid the female employees of the Tower View Cafe less than was paid the male employee solely on the basis of sex. The Secretary asks for injunctive relief from further violations of the Act and back pay of any unpaid minimum wages due the females involved for the period from March 1, 1973, through the sale of the business by Defendants on March 29, 1975, plus interest. Jurisdiction is predicated upon 29 U.S.C. § 217.

## FACTS

The Court makes the following findings of fact.

Defendant Richman-Anderson, Inc., is a corporation organized under the laws of North Dakota, with its principal place of business at Tower City, North Dakota, where, at all times relevant, it was engaged in the operation of a cafe known as Tower View Cafe. Defendant Willard E. Richman acted in the interest of Defendant Richman-Anderson, Inc. in relation to the employees of the cafe. The business activities of Richman-Anderson, Inc., constitute an enterprise within the meaning of 29 U.S.C. § 203(r) and, as such, was engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1). The annual dollar volume was in excess of $250,000.00.

Tower View Cafe was a seven day a week, twenty-four hour a day operation, located in a rural community adjacent to Interstate Highway 94, and geared to service interstate traffic, particularly truckers. A gasoline service station was operated in conjunction with the cafe. The cafe had a seating capacity of seventy-two persons, and employed from twenty-five to forty-five employees, most of whom were local people that worked only part-time. The 2:00 P.M. to 10:00 P.M. shift was the heaviest shift. It sold the most steaks and produced the largest gross revenue.

All of the food handlers and all of the cooks and bakers employed by Defendants were female, except for Orrin Hanson.

Prior to commencing work at the Tower View Cafe in July, 1965, Orrin Hanson had been employed as manager of grain eleva-

tors. Health problems resulting from exposure to dust caused him to leave that occupation. In January, 1965, he enrolled in Lake Region Junior College Cooking School, and completed a six months course which included courses in kitchen mechanics, basic principles of cooking, breakfast cookery, meat cookery, sauces, soups and gravies, stocks, salads and their preparation, vegetable cookery, fruits, seafoods, baking, native cuisine, meat cutting, and recipes. Upon completion of his training, he was employed by the Tower View Cafe. He was first assigned to the 10:00 P.M. to 6:00 A.M. shift. He was paid less than female employees, and as his work improved additional responsibilities were assigned to him. During the times relevant to this case, he worked the 2:00 P.M. to 10:00 P.M. shift as the chief fry cook, and was an industrious, dependable employee who produced work excellent in both quality and quantity. He worked a schedule of twelve consecutive days, with two days off every other week during a slack period in the middle of the week. He had the ability to handle many different orders at the same time, put out good food, and prepare each steak to be served just as it had been ordered.

New employees with responsibility for cooking and baking were assigned to Hanson's shift to work with him for training. The heavy work was assigned to Hanson, including the responsibility for cleaning the deep fryer, a heavy kettle weighing 40 to 45 pounds. He had the responsibility for keeping the potato bin filled from 100 pound supply bags; the responsibility for lifting six gallon milk containers to eye level and filling the dispensers; and the responsibility of handling fifty pound blocks of shortening for the deep fryers. He was the meat steward for all three shifts. He checked the meat inventory daily and monitored the quality of the meat when delivered. He had the responsibility of reporting deficiencies to his employer. Hanson was subjectively considered by his employer to be a very valuable employee.

Ruth Pederson resided on a farm near Tower City. She began to work at the Tower View Cafe in 1966 as a dinner cook.

She had no formal training. Her prior experience was home cooking, commencing at the age of 12. She was the "dinner cook" and worked the 6:00 A.M. to 2:00 P.M. shift under a supervisor. It was her responsibility to prepare enough food to last until the next day. She made up hamburger patties, hamburger steaks, prepared dressings, gravies, and sauces, baked dinner rolls, raised doughnuts, baked pies, bismarcks and cookies, and prepared corned beef, ham, and meat balls. She handled her own supplies and assisted the grill cook on her shift as needed. She worked about 32 hours per week, and took time off to work on the farm during harvest.

Darlene Doering first started work at the Tower View Cafe in 1963. She left the employment in 1965 and returned in 1967. She had no formal training, and except for home cooking, she had no prior experience when she commenced work. She frequently worked with Orrin Hanson on the 2:00 P.M. to 10:00 P.M. shift and was responsible for the deep frying. She made ham salad, egg salad, bleu cheese dressing, and prepared radishes, tomatoes and pickles. At times she worked the 6:00 A.M. to 2:00 P.M. shift as grill cook, making breakfasts. On Hanson's day off, she did the grill frying.

Edith Heinze was first employed at the Tower View Cafe in 1969 as an assistant to the 2:00 P.M. to 10:00 P.M. cook, and during the period relevant to this case, was the cook on the 10:00 P.M. to 6:00 A.M. shift. This was the least busy of the three shifts, and she did both the grill frying and deep frying. She had no formal training, but had prior experience as a school cafeteria cook and as a cook at another cafe. She worked about 32 hours a week, and had an assistant when she worked on weekends. When working on the 2:00 P.M. to 10:00 P.M. shift, she made salads and garlic toast.

Lucille Grenz began working for Tower View Cafe in 1968. She had no formal training in cooking, but did have farm cooking experience. She became a cook's helper, and during the period relevant to this case was a pastry baker. She worked three or four days a week.

The only evidence before the Court relating to job responsibility of other female employees of Tower View Cafe is as follows:

Elizabeth Jane Muir prepared food for serving under menu planned and arranged by supervisor;

Ida Wolsky baked pastries under planned supervision;

Katie Lammers prepared food for serving under menu planned and arranged by supervisor;

Kathleen C. Preston washed dishes, prepared food for serving—not able to work very much because of duties at home;

Colleen Gubrud, dishwasher and waitress;

Susan C. Doering, dishwasher and beginning cook;

Nancy Stringer, cook's helper;

Jean Nelson baked pastries under supervision of supervisor.

Prior to March 1, 1973, through the date of the sale of the business by Defendants on March 29, 1975, Orrin Hanson was paid at a rate in excess of the other cooks and bakers, varying from 30¢ to 50¢ an hour, as shown on the attached Appendix. From August, 1974, through January, 1975, Hanson's additional pay was in the form of overtime after 40 hours per week. The other employees received overtime after 48 hours. This practice was discontinued on January 1, and Hanson was placed on a schedule 30¢ an hour over the female cooks and bakers.

## CONCLUSIONS

■ The Court concludes that on the whole, the work performed by the females was not equal in effort and responsibility to that performed by Hanson. The Plaintiff has failed to carry his burden of showing that Defendants paid Orrin Hanson, a male employee, more than female employees for equal work. The Defendant has proved the differential in pay was based on factors other than sex.

## RATIONALE

■ To make out a case under the Equal Pay Act, the Secretary of Labor

"must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' Although the Act is silent on this point, its legislative history makes plain that the Secretary has the burden of proof on this issue    . . . .

[O]nce the Secretary has carried his burden of showing that the employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Corning Glass Works v. Brennan,* 417 U.S. 188, 195–196, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974).[1]

This Circuit has recognized that

" 'Congress in prescribing "equal" work did not require that the jobs be identical, but only that they must be substantially equal. Any other interpretation would destroy the remedial purposes of the Act.

The Act was intended as a broad charter of women's rights in the economic field. It sought to overcome the age-old

---

1. 29 U.S.C. § 206(d)(1) provides:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed un-

der similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex; *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

belief in women's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it.'" *Shultz v. American Can Company-Dixie Products*, 424 F.2d 356, 360 (8th Cir. 1970).

On the basis of the evidence before the Court, job comparisons can only be made between Orrin Hanson, the male employee, and four female employees, Ruth Pederson, Darlene Doering, Lucille Grenz, and Edith Heinze. The evidence relating to the work of the other female employees is not sufficient for a determination of total job responsibilities and is largely job classification, which provides no information to the Court on job requirements and performance. *See* 29 C.F.R. § 800.121. The situation with Tower View Cafe is unique in that Hanson was the only male food handling employee. He was the only employee with formal training in cooking. He possessed seniority over all the female employees with the exception of Darlene Doering. He was utilized for all of the heavy jobs, and female employees were not generally required to do the heavy work, except when he or the Defendant, Willard E. Richman, were not available. Because of his skill in grill frying, Hanson was utilized to do the grill work on the most demanding and profitable of the three shifts. The cafe catered to interstate highway traffic, and particularly truckers. The success of the operation depended to a great extent on the quality and preparation of steaks, which were the most costly items sold, and which were in greatest demand on the 2:00 P.M. to 10:00 P.M. shift. The skill demonstrated by Hanson in his grill work caused his employer to assign new employees to his shift to learn from observing him and working with him. His diligence, dependability and experience was such that he was given the responsibility of monitoring the quality of the meat for the entire operation. Because of its location in a small, rural community, much of the labor available to Tower View Cafe was part-time. The patronage of the public was greatest on weekends, a time that employees prefer to take off. To meet the needs of his employer, Hanson worked every weekend.

29 C.F.R. § 800.119 provides:

"Section 6(d)(1) of the Act prohibits an employer from paying to employees of one sex wages at rates lower than he pays employees of the opposite sex for 'equal work on jobs' directed by the statute in terms of equality of the 'skill, effort and responsibility' required for performance and similarity of the 'working conditions' under which they are performed. This descriptive language refers to 'jobs'. In applying the various tests of equality to the requirements for the performance of such jobs, it will generally be necessary to scrutinize the job as a whole and to look at the characteristics of the jobs being compared over a full work cycle. This will be true because the kinds of activities required to perform a given job and the amount of time devoted to such activities may vary from time to time. As the legislative history makes clear, the equal pay standard provided by the Act is designed to eliminate any wage rate differentials which are based on sex; nothing in the equal pay provision is intended to prohibit differences in wage rates that are based not at all on sex but wholly on other factors."

The working conditions of all the employees was similar and it is recognized, considering separately each of Hanson's responsibilities relating to his work, each of the four female employees was capable of substituting for Hanson on any one of his many assignments. However, the evidence is clear the overall requirements of the jobs of each of the four female employees did not require substantially the same effort or the same responsibility as the job required of Hanson.

The Secretary failed in his burden, but had he met it, he would not have been entitled to the relief requested, because under the evidence of the case, Defendant has established that the differential in pay is

based on a factor other than sex. *See* 29 U.S.C. § 206(d)(1); 29 C.F.R. § 800.140; *Hodgson v. Robert Hall Clothes, Inc.,* 473 F.2d 589, 594 (3rd Cir. 1973).

IT IS ORDERED that judgment be entered for the dismissal of the Secretary's complaint.

Dated this 21 day of June, 1976.

A P P E N D I X

SCHEDULE OF EMPLOYEES' HOURLY WAGES FROM MARCH 1, 1973 TO FEBRUARY, 1975 *

|  | March 1, 1973 | Aug., 1973 | March, 1974 | Aug., 1974 | Jan., 1975 | Feb., 1975 |
|---|---|---|---|---|---|---|
| Orrin Hanson | $2.45 | $2.50 | $2.75 | $2.75 | $2.90 | $3.20 |
| Ruth Pederson | $2.00 | $2.05 | $2.26 | $2.75 | $2.90 | |
| Darlene Doering | $2.00 | $2.05 | $2.26 | $2.75 | $2.90 | |
| Lucille Grenz (Rehired June, 1973 at $2.00) | | $2.05 | $2.26 | $2.75 | $2.90 | |
| Edith Heinze (Pay raised to $2.00 May, 1973) | | $2.05 | $2.26 | $2.75 | $2.90 | |

* February, 1975 was the date of the last raise given any employee during this time period.