Nancy A. TOMCHEK–MAY, Plaintiff,

v.

BROWN COUNTY, Defendant.

Civ. A. No. 82–C–423.

United States District Court,
E.D. Wisconsin.

March 6, 1984.

Lise Lotte Gammeltoft, Kaftan, Kaftan, Kaftan, Van Egeren, Ostrow, Gilson & Geimer, S.C., Green Bay, Wis., for plaintiff.

John C. Jacques, Asst. Corporation Counsel for Brown County, Green Bay, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Nancy A. Tomchek-May, the plaintiff, is employed as Personnel Coordinator of the

Brown County Mental Health Center. On April 9, 1982, she brought this action under Title VII of the Civil Rights Act of 1964 and under the Equal Pay Act of 1963 against Brown County for lost wages and benefits and for other injuries caused as a result of alleged sex discrimination suffered by her. The plaintiff asserts that she has been and still is receiving less pay on account of her sex than a male employee holding the same position in the Brown County Highway Department, even though both she and said male employee perform substantially equal work. This court has subject matter jurisdiction under 28 U.S.C. §§ 1337, 1343.

Before the Court at the present time are cross motions for summary judgment on the plaintiff's claim under the sex discrimination provision of the Equal Pay Act, 29 U.S.C. § 206(d). The issues raised originally were presented in an earlier motion for summary judgment filed by the defendant when this matter was before the Honorable Myron L. Gordon. No affidavits having been filed at that time, Judge Gordon denied the motion because of the undeveloped state of the record and gave the defendant permission to renew its motion after further discovery.

On September 19, 1983, the defendant renewed its motion for summary judgment on the plaintiff's Equal Pay Act claim and submitted in support thereof "Plaintiff's Answers to Interrogatories dated September 13, 1983," along with nine deposition transcripts. The plaintiff responded on October 11, 1983, by filing a cross motion for partial summary judgment with attached affidavits and exhibits.

Brown County urges the Court to find from the undisputed material facts of record that the plaintiff and her male counterpart in the County's Highway Department are not employees within a single "establishment" as required under section 6(d)(1) of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1). Furthermore, the defendant contends, based upon the documentary evidence of record, that the plaintiff is unable as a matter of law to establish that her job is "substantially equal" to that of her male counterpart; she therefore cannot establish a prima facie case of unequal pay for equal work. Brown County accordingly argues that it is entitled to dismissal of the Equal Pay Act claim on either of these two alternative grounds.

The plaintiff, on the other hand, urges the Court to draw precisely the opposite legal conclusions. In support of her cross motion for partial summary judgment, she argues that the Brown County Highway Department and the Brown County Mental Health Center indeed are one "establishment" as a matter of law. Moreover, according to the plaintiff, the evidence is sufficient to support a legal conclusion that her job and that of her male counterpart in the Highway Department are substantially equal in skill, effort, and responsibility. Thus, the plaintiff agrees that the material facts are not in genuine dispute. She nevertheless contends that those facts support entry of judgment in her favor.

I conclude, first, that the Mental Health Center and the Highway Department are within the same "establishment," and that judgment must be entered in favor of the plaintiff on this issue. Whether the two Personnel Coordinators perform substantially equal work, however, cannot be determined from the documentary evidence of record. The cross motions for summary judgment on this second issue, therefore, are denied.

## I. "ESTABLISHMENT"

Section 6(d)(1) of the Equal Pay Act of 1963 states in pertinent part:

No employer having employees subject to any provisions of this section shall discriminate, *within any establishment* in which such employees are employed, between employees on the basis of sex by paying wages to employees in such *establishment* at a rate less than the rate at which he pays wages to employees of the opposite sex in such *establishment* for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are

performed under similar working conditions. . . .

29 U.S.C. § 206(d)(1) (emphasis added). The first issue is whether the plaintiff's comparison of pay rates is one between employees "within any establishment." The material facts are as follows.

Nancy Tomchek-May holds the position of Personnel Coordinator of the Brown County Mental Health Center. John Cooney, the male employee with whom the plaintiff compares her rate of pay, is the Personnel Coordinator of the Brown County Highway Department. The Mental Health Center is located in the City of Green Bay, and the Highway Commission offices are situated in the adjacent Village of Howard. Both, plainly, are administrative departments of Brown County. The Mental Health Center has about 400 full and part-time employees; the Highway Department has approximately 115.

The business of creating and maintaining a county highway system is governed by Chapter 83 of the Wisconsin Statutes, which authorizes the county board to select for those purposes a county highway committee and a highway commissioner. Brown County has both a committee and a commissioner as administrative offices.

Brown County operates its Mental Health Center under the authority of Chapter 51 of the Wisconsin Statutes. This center is governed by the Brown County Community Mental Health, Mental Retardation, Alcoholism and Drug Abuse Board, commonly known as the Unified Board. The powers and responsibilities of the Unified Board are set forth by state statute and include the power to appoint a program director with executive and administrative authority to manage, operate, and maintain the mental health programs carried out under the auspices of the Board. *See* Wis. Stat. § 51.42(6).

It goes without saying that the Mental Health Center and the Highway Department perform quite different functions for Brown County. Given their lack of business interaction, it is not surprising that each department has its own governing body and administrative staff to perform its special functions. Nevertheless, employees who are qualified can be transferred from one county department to another; the plaintiff states that several employees have been transferred during the nine years she has worked for Brown County.

In contrast to the more specialized functions of the county, personnel management in Brown County has become more centralized. The Board of Supervisors has established a county personnel department with its own personnel director pursuant to Wis. Stat. § 59.025(3)(c), and has created the Brown County Personnel Committee in accordance with Wis.Stat. § 59.06 to coordinate the personnel functions of the county. "To establish a uniform county personnel policy and procedures to recruit, select, develop and maintain an effective and responsive work force for Brown County," the Board of Supervisors established as Chapter 4 of the Brown County Code a set of Personnel Rules and Regulations governing personnel administration for all county employees and departments. *See* Brown County Code §§ 4.02, 4.03.

Chapter 4 of the code delineates the division of authority for administering the countywide personnel policies. The Brown County Board of Supervisors approves the annual budget and has ultimate responsibility for reviewing county personnel policies and amendments. The County Board has delegated to its Personnel Committee the responsibility for reviewing proposed personnel policies and making recommendations on them to the full Board. The committee also must review personnel actions in all county departments. *Id.* §§ 4.42(1), (2).

The director of the Personnel Department is the county's chief administrator of personnel policies and procedures adopted by the County Board. Under the Personnel Rules and Regulations, the Personnel Director approves personnel appointments to and removal from county positions; maintains complete employment and performance records of all county employees; develops and maintains a countywide classi-

fication plan to standardize county job titles and descriptions; develops and administers the employee recruitment and selection program; establishes and maintains lists of persons eligible and qualified for appointment and promotions within the county service; and develops training programs for all county employees. *Id.* § 4.42(4).

Each county department is charged with the responsibility of enforcing the personnel policies and rules. The department heads may adopt such additional rules and regulations as required by law, subject to the Personnel Director's approval. Moreover, the heads of each department may appoint and remove employees subject to approval of the Personnel Director. *Id.* § 4.42(5).

The Brown County Personnel Committee has delegated much of the administrative oversight authority over matters concerning personnel policies. The Unified Board, for example, has authority to "fix salaries of personnel employed to administer the program, subject to the approval of the county board ...." Wis.Stat. § 51.-42(5)(h)5. In practice, the record suggests that job descriptions and salary ranges for county positions are arrived at through the joint efforts of the administrative staffs of the Personnel Director and the governing body for the individual department involved.

Whether separate county departments performing distinct services are considered properly to be different "establishments" under the Equal Pay Act is a question no court has faced squarely. By and large, courts have chosen to supply meaning to the term "establishment" on a case-by-case basis. Some guiding principles, however, can be divined.

While the term "establishment" is defined nowhere in the Equal Pay Act, the Department of Labor, which is the administrative agency charged with administering the Act, has provided, by regulation, that each physically separated place of business ordinarily is to be considered a separate establishment, 29 C.F.R. § 800.108, and the term "establishment" used in the equal pay provisions is to have the same meaning as it has in the other provisions of the Fair Labor Standards Act (FLSA). 29 C.F.R. § 800.103.

In 1963 when the Equal Pay Act was adopted, the term "establishment" already had been read narrowly in relation to the minimum wage exemption from the FLSA provisions. Courts limited the exemption for retail, service, dry-cleaning, and recreational "establishments" to the distinct physical places of business rather than an entire enterprise. *See, e.g., Mitchell v. Bekins Van & Storage Co.*, 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589 (1957) (five centrally controlled but physically separate warehouses, not one "retail establishment" for exemption purposes).

In the early Equal Pay Act cases, courts continued to defer to the narrow Labor Department construction of the "establishment" provision. In *Shultz v. Corning Glass Works*, 319 F.Supp. 1161 (W.D.N.Y. 1970), *modified and aff'd on other grounds*, 474 F.2d 226 (2d Cir.1973), *aff'd*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), for example, the employer had three factories, each having its own staff, payroll, and management, although organized under a centralized personnel office. Two of the factories were back-to-back with a connecting passageway; the third was a half mile away. The court held that the two adjoining plants were one establishment. The physical separation of the third plant and the consequent lack of employee transferability between it and the distant adjoining plants meant that the third factory was a separate establishment. *Accord Hodgson v. Robert Hall Clothes, Inc.*, 326 F.Supp. 1264 (D.Del.1971), *modified on other grounds*, 473 F.2d 589 (3d Cir.1973), *cert. denied*, 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85 (1973) (separate men's and ladies' clothing departments in a single store are part of a single establishment).

When the Equal Pay Act was extended to reach public schools and, later, professional employees, it became apparent that the narrow reading of the term "establishment" would have a restrictive effect on

the remedial purpose of the Equal Pay Act. The Fifth Circuit adopted a broader view of the term in *Brennan v. Goose Creek Consolidated Independent School District,* 519 F.2d 53 (5th Cir.1975). In *Goose Creek,* the court of appeals observed that a narrow construction of the word "establishment" in relation to the equal pay provisions "might make proof of discrimination more difficult, thus frustrating congressional intent." *Id.* 57. The court held that the school district itself constituted a single establishment for the purpose of applying the Equal Pay Act provisions to male and female school janitors, refusing to be bound by the administrative interpretation of the statute. The holding turned upon proof that the central administration of the school district and not the school principals hired the janitors, set their wages, and assigned them to the school building where they were to work. The court also noted that the janitors' daily duties and work schedules varied little from building to building, and that the central authority often transferred them from one building to another.

Other courts likewise have eschewed a strict interpretation of the term "establishment" and have looked to factors beyond simply the physical separation of the business entities.

In *Usery v. Dallas Independent School District,* 20 FEP Cases 832 (N.D.Tex.1977), the district court held the 182 public schools of the Dallas school district to comprise one "establishment" within the meaning of the Equal Pay Act in an action brought by a custodial employee. The decision in that case was based on the school system's administrative integration:

> The employees involved are hired by the central administration, their wages and work assignments are determined by the central administration, and the pay policy which is the basis of this law suit was established as a result of action by the central administration. The individual school principals simply act as immediate supervisors of the custodial staff at their schools, as the Fifth Circuit pointed out

in the Goose Creek case, the school system is the "establishment" not the individual buildings.

*Id.* 840.

The facts in *Usery,* however, stand in sharp contrast to those in *Alexander v. University of Michigan-Flint,* 509 F.Supp. 627 (E.D.Mich.1980), which was an action brought by a Career Planning and Placement Officer of the university system in Michigan. In that case, it was the Flint campus and not the University of Michigan system as a whole that was the establishment at issue.

The court in *Alexander* acknowledged that the "establishment" test is "the amount and degree to which the physically separate places of business interact" and not simply the fact of physical separation. *Id.* 629. According to the court, "it is the central administrative office, with sole authority to hire, fire, set wages, and assign employees to any school within the system, and not the common name or similarity of responsibility of the employees, which leads courts to conclude a school is a solitary establishment." *Id.*

The record in *Alexander* established that the Flint campus had its own budget, its own department heads, and its own personnel department. It was established further that Flint made its own hiring, salary, and promotion decisions in regard to its staff. Although the university had a state-wide salary plan and evaluation program, one set of job descriptions, and one method of obtaining job classification changes, each campus' management personnel had discretion, within these university guidelines, to make its job and salary decisions. For these reasons, Alexander was limited under the Equal Pay Act to comparing herself with men employed at the Flint campus. *Id.* 628–29.

Finally, in *EEOC v. Maricopa County Community College District,* 29 FEP Cases 383 (D.Ariz.1982), a financial aids assistant at Phoenix College sued under the Equal Pay Act to compare her salary with those of financial aids assistants at the seven other colleges in the Maricopa

County Community College District (District). In moving for summary judgment, the District attempted to demonstrate that its seven member colleges were separate establishments. The district court denied the motion because the plaintiff was able to raise a question of fact whether the District retained ultimate control over the hiring, firing, and assigning of employees of the colleges within the system. *Id.* 384.

The facts in that case suggested that the District had "central control over the critical personnel matters" from which the lawsuit arose. *Id.* The District controlled employee benefits and wage classifications, and required employees seeking re-evaluation of their positions to submit themselves to the district-wide reclassification system. The court further found that

> the facts presented by the [plaintiff] Commission raise issues concerning the extent to which the District retains the right to veto or check the actions taken by its satellite colleges which do not conform with District policy. Such efforts at maintaining uniformity throughout a geographically restricted educational system further negates factual arguments that the District does not have central control.

*Id.* 385. On that record, the court in *Maricopa* refused to find that the District comprised a single establishment.

Although courts have welcomed this broader reading of the word "establishment" in actions under the Equal Pay Act, they have not been eager to apply that interpretation in cases not involving schools. In *Wetzel v. Liberty Mutual Insurance Co.*, 449 F.Supp. 397 (W.D.Pa. 1978), for example, the court declined to treat an insurance company's 130 nationwide branch offices as a single establishment in an action brought by a female claims adjuster. Implicit in the decision is the understanding that it would be futile to compare wage levels on a nationwide basis given the diversity of working conditions and costs of living. *See* 1 Larson, Employment Discrimination § 6.44, at 2–81 (1983).

*Gerlach v. Michigan Bell Telephone Co.*, 448 F.Supp. 1168 (E.D.Mich.1978), involved an attempt to have the entire statewide operations of Michigan's telephone company declared a single establishment. In that case, 31 of the telephone company offices, each serving a local geographic area, were held to be separate establishments. The court distinguished *Goose Creek* because the female plaintiffs worked primarily at one office; they were not often transferred between offices but only were loaned for brief periods; and "[a] substantial proportion of their supervision [was] provided in the local office." *Id.* 1172. Indeed, the local management responsibility at each office was fairly comprehensive, with each plaintiff's personnel file kept at the office in which she worked. *Id.* 1170.

■ Viewing the facts of the instant case in the light most favorable to the plaintiff, as the Court must do on a motion for summary judgment, I find as a matter of law that defendant Brown County as a whole rather than each of its departments is a single establishment within the meaning of section 6(d)(1) of the Equal Pay Act. It is true that the Brown County Highway Department and the Brown County Mental Health Center are distinct and physically separate offices performing different county functions. Similarly, I cannot infer from the evidence before me that personnel coordinators, or any other Brown County employees for that matter, are freely transferable between departments to the point of being interchangeable. Finally, it must be acknowledged that this is not a school case; the county provides a variety of services which are performed by and large independently.

Nevertheless, these factors are not determinative in the circumstances of this case. Even though Brown County is not a school district, it is appropriate in light of the county's administrative integration to require the larger entity to maintain nondiscriminatory wage levels throughout its departments. First, although physically separate, the county departments at issue here are not physically remote. Second, and

more important, a business integration of the departments is unnecessary, especially when there exists countywide functional integration in an administrative sense. Brown County administers its personnel functions in a centralized manner. Wage control, job classifications, and other personnel functions—factors critical to this lawsuit—are subject to the ultimate control of Brown County's central administration, notwithstanding the presence of supervision and input at the department level. For these reasons, the plaintiff is entitled to partial summary judgment on the "establishment" issue.

## II. "SUBSTANTIALLY EQUAL" WORK

■ To establish a claim of unequal pay for equal work, a plaintiff must make a prima facie showing by a preponderance of the evidence that the employer pays different wages to males and females for equal work requiring equal skill, effort, and responsibility under similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). Once that showing is made, the employer has the burden of showing by a preponderance of the evidence that the pay differential is justified under one of the four statutory exceptions. *Id.* 196–97, 94 S.Ct. at 2229. *See* 29 U.S.C. § 206(d)(1)(i)–(iv).

■ The plaintiff, however, need not show that the two jobs are identical; only substantial equality of skill, effort, responsibility, and working conditions need be proved. *EEOC v. Kenosha Unified School District No. 1*, 620 F.2d 1220, 1224 (7th Cir.1980). Thus, even if Nancy Tomchek-May's job at the Mental Health Center is within the same establishment as John Cooney's job in the Highway Department, those jobs may be compared under the Equal Pay Act only if they are shown to be "substantially equal." Whether the Personnel Coordinator's work in Brown County's Highway Department and Mental Health Center is substantially equal must be determined on a case-by-case basis. *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir.1981).

■ The parties in this case have filed cross motions for summary judgment to resolve the issue of substantially equal work as a matter of law, both asserting that there are undisputed facts of record entitling them to judgment in their favor. If such facts exist in the record, I cannot find them. Both motions are denied on this second issue.

Both the plaintiff and John Cooney hold the position of Personnel Coordinator in their respective departments. Their duties consist primarily of personnel recordkeeping functions. As Personnel Coordinator for the Mental Health Center, the plaintiff screens and interviews applicants for Health Center positions, and also places persons referred pursuant to special funded employment programs. Although applicants for Highway Department positions are screened by the county's central personnel department, Cooney does participate in the interviewing of those applicants.

Additionally, both Tomchek-May and Cooney maintain workmen's compensation records, fill out forms for payroll changes, and administer job posting procedures for union positions in their respective departments. Moreover, it appears from the record that both Personnel Coordinators are responsible in some degree for ensuring department safety; both also participate to some extent in labor relations matters for their departments.

Brown County contends, however, that the differences in the two positions are more striking than their similarities. Although the plaintiff does assist in labor negotiation and grievance administration, Brown County characterizes her responsibility as one of information gathering. In contrast, the defendant argues that Cooney actually sits in on grievance matters and labor negotiations, and thus participates in labor relations in a much more direct way. The county further contends that Cooney bears a significantly larger responsibility for safety than does the plaintiff.

Beyond labor relations and departmental safety, Brown County asserts that Coo-

ney's job is not substantially equal to that of the plaintiff because he performs additional personnel functions and, on occasion, even assists in a non-recordkeeping capacity. Specifically, Cooney spends a substantial period of his time (2½ to 3 hours) coding time sheets. He also maintains Occupational Safety and Health Administration records and accounts of billings to other agencies. The payroll department performs these responsibilities for Nancy Tomchek-May. Finally, John Cooney is sometimes called upon to make work crew assignments and to fill in for the Highway Department's two Road Superintendents in their absence. This involvement in department operations, according to Brown County, is in contrast to the plaintiff's strictly personnel-related obligations.

On the record before me, I am unwilling to enter judgment on this issue in either party's favor. The facts relating to each employee's specific duties and responsibilities are not clear enough to decide whether Nancy Tomchek-May and John Cooney are engaged in "substantially equal" work. In particular, I do not understand precisely the extent of Cooney's "line responsibilities" as distinguished from his personnel or staff-related responsibilities. Second, I cannot make full findings of fact on this record in regard to each employee's relative involvement in labor relations matters and in maintaining department safety. Therefore, Brown County's motion for summary judgment and the plaintiff's cross motion for partial summary judgment are denied on the issue of substantially equal work.

### ORDER

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that the plaintiff's motion for partial summary judgment is granted in part and denied in part.