558 F.2d 1318
 20 Fair Empl.Prac.Cas. 807,
23 Wage & Hour Cas. (BN 362,
14 Empl. Prac. Dec. P 7689, 82 Lab.Cas. P 33,551
 W. J. USERY, Jr., Secretary of Labor, United States
Department of Labor, Appellant,
v.
Willard RICHMAN, Individually, and Richman-Anderson, Inc., a
corporation, trading as Tower View Cafe, Appellees.
 No. 76-1723.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 18, 1977.
Decided July 14, 1977.
 
 Melanie F. Nussdorf, U. S. Dept. of Labor, Washington, D. C. (argued), W. J. Kilberg, Helen W. Judd, Rita L. Stotts and Tedrick A. Housh, Washington, D. C., on brief, for appellant.
 Frank Magill, Fargo, N. D., argued and on brief, for appellee.
 Before LAY and WEBSTER, Circuit Judges, and REGAN, Senior District Judge.*
 WEBSTER, Circuit Judge.
 
 
 1
 The Secretary of Labor brought an action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq., against Willard Richman, individually, and Richman-Anderson, a corporation trading as the Tower View Cafe. He alleged that defendants violated the Equal Pay Act, 29 U.S.C. § 206(d), by paying the female cooks at the Tower View Cafe less than they paid the lone male cook, Orrin Hanson, for work that was equal within the meaning of the Act. The Secretary sought to enjoin defendants from violating the Act and to restrain them from withholding unpaid wages due the women as a result of the violations.[1] Following a non-jury trial, the District Court[2] ordered the complaint dismissed, finding the Secretary had failed to meet his burden of showing that the work performed by the women was equal within the meaning of the Act to that performed by Hanson. The District Court also found that the defendants had proved that the differential in pay was based on factors other than sex, although it did not specify what those factors were. From this adverse ruling, the Secretary now appeals.
 
 
 2
 A detailed statement of the facts can be found in the District Court's opinion. 433 F.Supp. 364 (D.N.D.1976). To summarize briefly, the Tower View Cafe was located in a rural community in North Dakota. It was open twenty-four hours a day, seven days a week, and catered primarily to interstate highway traffic. It employed from twenty-five to forty-five employees, most of whom were local residents who worked only part-time. The employees worked in shifts, either from 6 a. m. to 2 p. m., 2 p. m. to 10 p. m., or 10 p. m. to 6 a. m. The District Court found that the 2 p. m. to 10 p. m. shift was the heaviest; the greatest number of steaks was sold on this shift, and the largest gross revenue was produced.
 
 
 3
 During the time period involved in this case, Orrin Hanson was employed as the chief fry cook on the 2 p. m. to 10 p. m. shift. He worked a schedule of twelve consecutive days, with two days off every other week in the middle of the week. Prior to commencing work at the cafe in July, 1965, Hanson took a six month course at Lake Region Junior College Cooking School. None of the other employees at the Tower View Cafe had formal training in cooking, but several of the female cooks had experience either in home cooking, farm cooking, or school cooking.
 
 
 4
 The District Court found that when Hanson was first hired by the cafe, he was paid less than female employees. As his work improved, however, he was assigned additional responsibilities and his salary was increased. During the time period involved in this suit, Hanson had seniority over all the female employees except one.
 
 
 5
 The District Court heard testimony from Hanson, defendant Richman, five female employees of the cafe, a government Equal Pay Act investigator, and a job analyst for the North Dakota Employment Security Bureau.[3] The court concluded that on the basis of the evidence presented, job comparisons could only be made between Hanson's job and the jobs of four female employees. It ruled that "the overall requirements of the jobs of each of these four female employees did not require substantially the same effort or the same responsibility as the job required of Hanson." We affirm.
 
 
 6
 The Equal Pay Act identifies four considerations to be explored in determining whether otherwise similar jobs require equal work: skill, effort, responsibility and working conditions. The burden of proving that the employer pays workers of one sex more than workers of the opposite sex for work that is equal within the meaning of the Act is on the Secretary. Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). For work to be "equal," it is not necessary that the jobs be identical, but only that they be substantially equal. Peltier v. City of Fargo, 533 F.2d 374, 377 (8th Cir. 1976). Once the Secretary has sustained the burden of showing the jobs are equal, the employer can escape liability by showing the differential is justified under one of the Act's four exceptions. On this the employer has the burden. Corning Glass Works v. Brennan, supra, 417 U.S. at 196-97, 94 S.Ct. 2223. The District Court found that the working conditions of all the cafe's employees were similar. It made no specific finding regarding the skill Hanson's job required. Thus our review will focus upon the two considerations the District Court found determinative: effort and responsibility.
 
 
 7
 The trial court found that the heavy work at the cafe was assigned to Hanson. He was also meat steward for all three shifts. He checked the meat inventory daily and monitored the quality of meat when delivered. It was also his responsibility to keep the potato bin filled, to refill milk dispensers, and to handle shortening blocks for the deep fryers.
 
 
 8
 The District Court found that, while the women were able to substitute for Hanson in terms of his individual assignments, the overall work for which he was responsible was not substantially the same as that of the women. We agree with the District Court that it is the overall job and not its individual segments which must form the basis of comparison. Thus such factors as the amount of heavy lifting performed by Hanson and not by the women are to be considered along with all other aspects of Hanson's duties.
 
 
 9
 The nature of Hanson's shift, which the District Court described as the "most demanding," is a key factor. It was during this shift that the more expensive food was prepared. The sales volume was substantially higher,[4] and thus job requirements such as preparation, the avoidance of waste and the ability to satisfy customers would be at a premium. While no figures were offered to show the profitability of the 2:00 p. m. to 10:00 p. m. shift, it seems axiomatic that the amount of responsibility required will be greater for an employee responsible for the proper handling of a significantly more valuable portion of the employer's inventory than for another employee engaged in similar unsupervised work on less costly inventory.
 
 
 10
 There was substantial evidence to support the District Court's finding that Hanson was responsible for training other employees and that he had authority to make effective recommendations with regard to discipline. We cannot say that these findings are clearly erroneous. It is also clear from the record that the owner reposed a special confidence in Hanson in relation to his work. There emerges from the totality of his duties a picture of special responsibility which supports the conclusion that the Secretary failed to prove that the work was equal. Title 29 C.F.R. § 800.127 (1976) provides in part:
 
 
 11
 Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations.
 
 
 12
 This case does not involve a comparison between a number of men performing tasks similar to those assigned to a number of women. Cf. Peltier v. City of Fargo, supra; Shultz v. American Can Co., 424 F.2d 356 (8th Cir. 1970). Instead, we have one man whose job is compared with the jobs of four women. Enough substantial distinctions between the effort and responsibility required of Hanson and the women are set forth in the District Court's findings, which are not clearly erroneous, that to second-guess its legal conclusion would require us to identify where and how the District Court applied an erroneous standard of law. No such error has been demonstrated to us. While each case must be considered on an ad hoc basis, see Brennan v. Prince William Hospital Corp., 503 F.2d 282, 286 (4th Cir. 1974), cert. denied, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975), we think the District Court has placed this case in proper perspective and we decline the invitation to relitigate the weight to be given to the facts. Such fine tuning is beyond the scope of our review. We hold the jobs were not proved to be equal and we affirm the judgment of the District Court.[5]
 
 
 
 *
 The Honorable John K. Regan, Senior Judge, United States District Court for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 On March 29, 1975, approximately two weeks after the complaint was filed, defendants sold the cafe to Ebners, Inc. The Secretary's motion to join Ebners, Inc. as a defendant was denied. Because of the two-year statute of limitations, 29 U.S.C. § 255, only alleged violations between March 1, 1973, and March 29, 1975, are involved in this action
 
 
 [2]
 The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota
 
 
 [3]
 Gracia Thompson, who spent the bulk of her twenty-six years with the Employment Bureau placing employees in cafes and similar establishments, testified that Hanson's job was that of a "working chef," while the women cooks were "second cooks" or "helpers." Based on her experience, she concluded the distinction between these categories justified a wage differential
 
 
 [4]
 Evidence presented at trial showed that in 1973, the 6 a. m. to 2 p. m. shift produced $143,550.98 in gross receipts; the 2 p. m. to 10 p. m. shift produced $161,443.34; and the 10 p. m. to 6 a. m. shift brought in $69,800.67. For 1974, the 6 a. m. to 2 p. m. shift had gross sales of $157,935.24; the 2 p. m. to 10 p. m. shift had $182,147.61 in gross sales; and the 10 p. m. to 6 a. m. shift had $81,152.31
 
 
 [5]
 While Judge Benson did not specify the "factors other than sex" that he found justified the pay differential, he cited Hodgson v. Robert Hall Clothes, Inc., 473 F.2d 589, 594 (3d Cir. 1973), as support for his finding. Robert Hall held that the difference in profitability between the men's and women's departments could justify a wage differential. Judge Benson's reference to this case indicates he found a difference in profitability between Hanson's shift and the other shifts that could justify Hanson's higher pay. Because we affirm Judge Benson's ruling that the Secretary failed to meet his burden of proving the jobs were equal, we need not consider whether defendants proved the existence of a factor other than sex. See Corning Glass Works v. Brennan, supra, 417 U.S. at 196, 94 S.Ct. 2223, 41 L.Ed.2d 1