**Emma DeGRAFFENREID et al., Appellants,**

v.

**GENERAL MOTORS ASSEMBLY DIVISION, ST. LOUIS, et al., Appellees.**

**No. 76–1599.**

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1977.

Decided July 15, 1977.

---

Marilyn Holifield, NAACP Legal Defense Fund, New York City, for appellant; Louis Gilden and Doreen Dodson, St. Louis, Mo., and Jack Greenberg, New York City, on brief.

Edwin G. Fabre, Asst. Gen. Counsel, Detroit, Mich., for appellee, Unions; Morris Levin, St. Louis, Mo., James Youngdahl, Little Rock, Ark., and John A. Fillion, Jordan Rossen, M. Jay Whitman, Detroit, Mich., on brief.

James E. McDaniel, St. Louis, Mo., for appellee, General Motors; Frazier F. Hilder, Eugene L. Hartwig, Louis H. Lindeman, Jr., Detroit, Mich., and Doris J. Banta, St. Louis, Mo., on brief.

Lutz A. Prager, Equal Employment Opportunity Commission, Washington, D. C., for amicus curiae, EEOC; Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatric Rosenberg, Attys., Washington, D. C., on brief.

Before BRIGHT and ROSS, Circuit Judges, and URBOM, Chief District Judge.*

BRIGHT, Circuit Judge.

Five black women have brought this action against their former employer, General Motors Corporation (designated in the complaint as General Motors Assembly Division, St. Louis) (GM) and the United Automobile Workers (the international union and its Local 25) charging, among other things, that the seniority system and "last hired-first fired" layoff policy mandated by GM's collective bargaining agreement with the Union perpetuates the effect of GM's past race and sex discrimination, in violation of federal law proscribing discrimination in employment—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Plaintiffs seek to represent a class consisting of all black women who are the victims of GM's alleged discrimination.

In response to cross-motions for summary judgment the court dismissed on the merits the sex discrimination claims, and dismissed without prejudice the claim charging racial discrimination, ruling that a complaint such as this one under Title VII might state a "cause of action for race discrimination, sex discrimination, or alternatively either, but not a combination of both." *DeGraffenreid v. General Motors Assembly Division, St. Louis,* 413 F.Supp. 142, 143 (E.D.Mo.1976). The plaintiffs, Emma DeGraffenreid and others, bring this timely appeal. We affirm in part, for reasons not addressed by the district court, and reverse and remand in part.

Although plaintiffs advance broad claims of race and sex discrimination in defendant's employment practices, the defendant's seniority system and "last hired-first fired" layoff scheme are the main centers of controversy and the only issues addressed by the parties on appeal. The relevant facts stand largely undisputed. Before 1970, GM employed only one black female; she served as a janitor. GM concedes that until May 1, 1970, it excluded all women from assembly line work at its St. Louis plant except in areas where the women could always be sent home after a nine-hour shift without disrupting production when the plant worked longer hours. Pursuant to that pre-1970 policy, GM did employ some women in the cushion room, where automobile seats and upholstery are produced. However, no black females served as employees in the cushion room. In justification for the almost complete exclusion of women from its production facilities, GM stated in its brief:

Until shortly before employment was opened to females in all departments at GMAD St. Louis, state laws and regulations prohibited the employment of females for more than nine hours per day * * *, and prohibited an employer from working women around moving machinery. * * * General Motors had placed restrictions on the height and weight of its production employees which also may have reduced the employment of females.

GM began disregarding these state protective laws on or about May 1, 1970.

Plaintiff Emma DeGraffenreid applied for employment with GM in St. Louis in 1968, and again on June 5, 1973. She asserts that but for GM's discriminatory employment practices, she would have applied for employment with GM in 1965. GM did hire Ms. DeGraffenreid on June 12, 1973. Because of a business recession, GM laid off Ms. DeGraffenreid and a number of other employees on January 15, 1974. This employee has no recall rights under the collective bargaining agreement.

Plaintiff Brenda Hines applied for employment at GM on May 5, 1971, and again on May 31, 1973. She asserts that but for GM's discriminatory employment practices, she would have applied in 1965. GM hired Ms. Hines on June 1, 1973. She worked until September 26, 1973, when she temporarily left her employment, claiming sick leave. The company placed her on a layoff

---

* WARREN K. URBOM, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

status in mid-January 1974. Her employment recall rights have expired.

Plaintiff Alberta Chapman applied for employment with GM on May 12, 1971, and again on June 5, 1973. She alleges that she would have applied in 1965, but for GM's discriminatory employment practices. She was hired on June 12, 1973, and laid off in mid-January 1974. Her recall rights have also expired.

Plaintiff Brenda Hollis applied for employment on November 17, 1970, and was hired on December 7, 1970. She was laid off on December 17, 1971. She again applied for employment on May 24, 1973. She alleges that were it not for GM's discriminatory employment practices, she would have applied for employment in 1966.

Plaintiff Patricia Bell applied for employment at GM on November 17, 1970, and was hired on December 7, 1970. She was laid off effective May 8, 1972, at the end of a sick leave period. She was rehired May 16, 1973, and again laid off January 14, 1974. She apparently retains recall rights to employment. She asserts that she would have applied for employment in 1967, were it not for GM's discriminatory employment practices.

Plaintiffs DeGraffenreid, Hines, and Chapman filed a complaint with the EEOC on or about August 28, 1974. The EEOC subsequently issued a right-to-sue letter, and this action was filed on June 2, 1975.

As previously noted, prior to 1970, GM employed but one black female employee, as a janitor. GM hired 6 black female hourly production workers in 1970, 11 in 1971, none in 1972, and 137 in 1973. In late 1973, GM employed 155 black women out of approximately 8,500 employees. Immediately before the January 1974 layoffs, the GM St. Louis plant employed 8,561 workers; after the layoff, only 6,378 remained. Layoffs affected workers with dates of hire after May 24, 1968, including all of GM's black women production employees, save the one janitor. Only two of the black women laid off retained recall rights.

Our attention has been called also to population statistics disclosing that black women represent nearly 22% of the population of metropolitan St. Louis.

The district court discussed three issues in granting appellees' motion for a dismissal of the action. First, it determined that black women do not constitute a special class protected under Title VII, reasoning:

> The plaintiffs are clearly entitled to a remedy if they have been discriminated against. However, they should not be allowed to combine statutory remedies to create a new "super-remedy" which would give them relief beyond what the drafters of the relevant statutes intended. Thus, this lawsuit must be examined to see if it states a cause of action for race discrimination, sex discrimination, or alternatively either, but not a combination of both. [413 F.Supp. at 143.]

Second, the court ruled GM was free of unlawful discrimination against women in its hiring, seniority, and layoff policies for the following reasons: (1) GM's reliance on provisions of Missouri law relating to employment of women insulated it from charges of sex discrimination; (2) GM's seniority system did not perpetuate past discrimination because GM had hired female workers before the effective date of Title VII; and (3) assertions by plaintiffs that GM's illegal employment practices actually deterred several plaintiffs from applying for employment between 1965 and 1967, amount to "conclusory allegations" which cannot support a valid claim to constructive seniority or other relief under Title VII. The district judge also considered a consent decree entered by another judge of that court on January 9, 1973, and renewed on April 16, 1976, dealing with the hiring of women at GM, as "a further indication that the seniority practices of the defendants do not discriminate on the basis of sex." 413 F.Supp. at 144.

Third, the district court recognized that plaintiffs had raised viable claims of race discrimination, but decided that these claims should be consolidated in the interests of judicial economy with similar litigation pending against GM before another

484

judge in the Eastern District of Missouri, *Mosley, et al. v. General Motors,* D.C.Mo., 63 F.R.D. 127.[1] After the district judge in *Mosley* (Hon. John F. Nangle) refused to allow consolidation, the court below then dismissed this action in its entirety.

Appellants raise the following contentions on this appeal:

1) The district court erred in concluding that appellants cannot bring suit for a class of black women only and that a *prima facie* case could not be made by showing a statistical underrepresentation of black women in GM's workforce.

2) The district court erred in summarily dismissing the sex discrimination claims on their merits.

3) The district court erred in dismissing the race discrimination claims for reasons of judicial economy.

We do not subscribe entirely to the district court's reasoning in rejecting appellants' claims of race and sex discrimination under Title VII. However, after the submission of this case, the Supreme Court issued two opinions which make clear that we must sustain the district court's judgment on the appellants' Title VII claims, because those claims, dealing with discrimination in hiring and its effect on seniority and layoff, are either barred by limitations or fail to state a violation of Title VII. *See International Brotherhood of Teamsters v. United States,* —— U.S. ——, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *United Air Lines, Inc. v. Evans,* —— U.S. ——, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

The *Teamsters* case emphasizes that § 703(h) of Title VII validates facially neutral seniority systems, even if they perpetuate the impact of race discrimination which occurred before the effective date of Title VII. The Court concluded:

In sum, the unmistakable purpose of § 703(h) was to make clear that the routine application of a bona fide seniority system would not be unlawful under Title VII. As the legislative history shows, this was the intended result even where

the employer's pre-Act discrimination resulted in whites having greater existing seniority rights than Negroes.

\*    \*    \*    \*    \*    \*

Accordingly, we hold that an otherwise neutral, legitimate seniority system does not become unlawful under Title VII simply because it may perpetuate pre-Act discrimination. Congress did not intend to make it illegal for employees with vested seniority rights to continue to exercise those rights, even at the expense of pre-Act discriminatees. [*Id.,* —— U.S. at ——, 97 S.Ct. at 1863 (footnote omitted).]

*Evans* establishes that post-Act discrimination affecting an employee's seniority status which is not made the subject of a timely charge with the EEOC must be treated the same as pre-Act discrimination, and thus an otherwise neutral seniority system cannot be attacked merely because it perpetuates the effect of such discrimination. Ms. Evans, a female air flight attendant, married in 1968 and thereafter involuntarily resigned pursuant to her employer's rule forbidding flight attendants from marrying. The employer rehired her in 1972 as a new hire, with no seniority credit for her prior service. Ms. Evans, after complying with procedural prerequisites, brought suit under Title VII, contending that she had suffered and was continuing to suffer discrimination on account of her sex because her unlawful, forced resignation in 1968 continued to affect adversely her employment status by means of the employer's seniority system which allocated employment privileges on the basis of length of continuous employment.

Ms. Evans had initially filed a charge of discrimination against the company on February 21, 1973—five years after termination of employment, more than four years after the air carrier, United Air Lines, eliminated its no marriage rule, and more than a year after she had been rehired by United. *See* factual discussion in *Evans v. United Air Lines, Inc.,* 534 F.2d 1247 (7th Cir. 1976),

---

1. We considered aspects of the *Mosley* case in a previous interlocutory appeal. *Mosley v.*

*General Motors Corp.,* 497 F.2d 1330 (8th Cir. 1974).

*rev'd,* —— U.S. ——, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

The Supreme Court on review of the Seventh Circuit decision in *Evans* held the claim barred by reason of Ms. Evans' failure to file a discrimination charge within the statutory limitations period following her involuntary resignation in 1968. The Court explained:

> Respondent is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

> Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently than former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation. [—— U.S. at ——, 97 S.Ct. at 1889 (footnote omitted).]

■ Here, appellants allege that but for GM's discriminatory employment practices, each would have earlier applied for employment in 1965, 1966, and 1967, and presumably would have been hired at those times. Each appellant seeks seniority benefits retroactive to the dates when such employment applications allegedly would have been made. Each appellant was subsequently hired by General Motors between 1970 and June 12, 1973. Each appellant was laid off by mid-January 1974. The appellants, however, failed to file any complaint with the EEOC until August 28, 1974, at least seven years after the alleged initial discriminatory hiring practices, at least one year after General Motors hired the last of the appellants, thus ending any discrimination in hiring against them, and more than six months after the mid-January 1974 layoffs. Clearly, under *Evans,* appellants' Title VII claims are barred for failure to file charges within the pre-1972 ninety-day limitations period or within the current one hundred eighty-day limitations period beginning on the last day that GM discriminated against appellants in hiring.

■ In *Evans,* the discrimination was effectuated through forced resignation. Here, in contrast, the complaint focuses upon GM's alleged general pattern or practice of excluding black women from employment, which deterred these appellants from earlier seeking and obtaining employment with GM. Although we do not know precisely when GM's allegedly unlawful employment practices first affected these appellants, we can be sure that any unlawful failure to hire appellants ended on their respective dates of hire. As in *Evans,* the employer's seniority system is neutral in operation. Thus, when appellants failed to file charges with the EEOC within one hundred eighty days following their entry into service, GM was entitled to consider its earlier failure to hire appellants as lawful, a mere "unfortunate event in history which has no present legal consequences[,]" *United Air Lines, Inc. v. Evans, supra,* —— U.S. at ——, 97 S.Ct. at 1889, and measure appellants' seniority from their actual dates of hire.

Accordingly, we must affirm the dismissal of appellants' Title VII claims.

However, appellants' race discrimination claims based on 42 U.S.C. § 1981[2] remain. As we have noted, the district court dismissed all race discrimination claims without prejudice after appellants' attempt to consolidate those claims with the pending *Mosley* case failed. We hold that dismissal on the grounds of judicial economy was error. That Judge Nangle refused to consolidate this case with the *Mosley* litigation is of no import. If the action had been consolidated with the *Mosley* case, it nevertheless would have retained its independent status, and appellants would still have been entitled to a decision on the merits of their claims. As the Supreme Court noted in *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496–97, 53 S.Ct. 721, 727, 77 L.Ed. 1331 (1933),

> consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another. (Footnote omitted).

*See also Garber v. Randell*, 477 F.2d 711, 715–16 (2d Cir. 1973); *In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439, 441 (1st Cir. 1972); *Jones v. Den Norske Amerikalinje A/S*, 451 F.2d 985, 986–87 (3d Cir. 1971); 5 *Moore's Federal Practice* ¶ 42.02 at 42–21 to 42–22 (2d ed. 1976).

Although this action as originally cast may have presented issues sufficiently different from those raised in the *Mosley* litigation to warrant a separate trial, the parties and the court below may well conclude otherwise in light of our opinion that all claims other than those for race discrimination in hiring under § 1981 are barred by limitations. Our reversal of the district court's dismissal of the race discrimination claims under 42 U.S.C. § 1981 is without prejudice to any further efforts by the parties and the district court to consolidate or coordinate proceedings in this action with those in *Mosley*.

Accordingly, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.[3]

---

2. The appropriate limitations period for these claims is the five-year period established in Mo.Ann.Stat. § 516.120 (Vernon). *Drake v. Southwestern Bell Tel. Co.*, 553 F.2d 1185 (8th Cir. 1977). The district court correctly observed that sex discrimination in employment is not cognizable under § 1981. *See, e. g., Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 522 F.2d 1235, 1240 n. 8 (7th Cir. 1975), *mod. on other grounds*, 538 F.2d 164 (7th Cir.) (*en banc*), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Agnew v. City of Compton*, 239 F.2d 226 (9th Cir. 1956), *cert. denied*, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); *Olson v. Rembrandt Printing Co.*, 375 F.Supp. 413 (E.D.Mo.1974), *aff'd*, 511 F.2d 1228 (8th Cir. 1975) (*en banc*); *Fitzgerald v. United Methodist Community Center*, 335 F.Supp. 965 (D.Neb.1972).

3. In the exercise of our discretion, we decline to award appellants attorneys' fees at this stage of the litigation. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974).