Judy CHAPMAN, T. Dolores Butler, Leslie Ann Jassman, Joan Ann Cochran, Edna K. Riley, Danya L. Rookard, Constance J. Stader, Nancy Gilmore Swinford and Rueben L. Grundy, Plaintiffs,

v.

The PACIFIC TELEPHONE AND TELEGRAPH CO., Defendant.

No. C–74–2282 WWS.

United States District Court, N. D. California.

May 16, 1978.

Deborah Hinkel, Halvonik, Ruth Eisenberg, Christopher Wilson, Oakland, Cal., for plaintiffs.

Pillsbury, Madison & Sutro, William L. Diedrich, Jr., Clement L. Glynn, Stephen Stublarec, Lisa Finkelstein, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION

SCHWARZER, District Judge.

This action was brought by eight women and one black male individually against The Pacific Telephone and Telegraph Company ("Pacific").[1] All plaintiffs charge Pacific with violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The female plaintiffs also charge Pacific with violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) and the black male plaintiff charges a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiffs allege that Pacific discriminated against women and blacks by hiring them into a segregated line of progression, denying them opportunities for transfer or promotion out of the segregated line, and paying them less than white males for substantially equal work. Pacific has denied any discrimination. This Court has jurisdiction over the action under 28 U.S.C. § 1343.

The issues of liability and relief were bifurcated for trial, and the liability issues have been fully tried to the Court. This memorandum opinion will constitute findings of fact and conclusions of law on those issues for purposes of Rule 52(a), F.R.Civ.P.

## I. Facts

Pacific's Directory Department is responsible for the compilation and publication of Pacific's telephone directories. The Directory Department is divided into various divisions.

The sales division of the Directory Department is responsible for the sale of classified listings and advertisements in the so-called Yellow Pages of telephone directories. Historically, the sales division has been divided into three distinct selling groups: (a) telephone sales, (b) premise sales, and (c) National Yellow Pages Sales ("NYPS"). This litigation involves only the telephone and premise sales groups; plaintiffs have made no claim with respect to the NYPS group.

### A. Telephone Sales

The telephone sales group solicits sales and deals with customers by telephone from the Directory Department offices, except in rare cases when a customer visits the office. The telephone sales group is assigned that portion of the directory market which Pacific has determined can be most efficiently and profitably handled through telephone contact. Generally this consists of the smaller, relatively routine classes of accounts which tend to purchase fewer, smaller and simpler directory advertisements. For example, "Physicians and Surgeons" and "Attorneys" listings are assigned to the telephone group.[2]

Telephone sales are handled by telephone sales representatives ("TSRs"), a non-management position. The TSRs are given lists of customers whom they contact by telephone, working out of a single room at Pacific's Directory Department offices in San Francisco. The TSRs are organized into eight to twelve member crews each of which is supervised by a telephone sales supervisor ("TSS"), a first level management position.

TSSs work in the same room as the TSRs. They are in visual contact with their crews throughout the day, monitor some of their

---

1. On April 19, 1977, the Court granted plaintiffs leave to file a second amended complaint containing class action allegations. By order filed August 15, 1977, the Court denied plaintiffs' motion under Rule 23(c), F.R.Civ.P., that the action may be maintained as a class action.

2. Plaintiffs sought to prove that on occasion telephone sales handles complicated and lucrative advertising requiring the application of skills similar to those required for premise sales. The occurrence of these exceptional cases appears to be so rare that it does not impair the general validity of the description in the text.

telephone contacts, and provide continuous trouble shooting, assistance and instruction. As first level managers, TSSs are subject to rotation out of the TSS position into various other first level management positions.

All of the plaintiffs in this action were at one time TSRs and later promoted to the TSS position which they held at the time their respective charges of discrimination were filed. They complain about the terms of their employment while in the TSS position. There are no charges of discriminatory treatment while they were rotated into other first level management positions.

### B. *Premise Sales*

The premise sales group generally solicits sales and contacts customers at their places of business, *i. e.,* their premises. Classes of accounts which have historically purchased more and larger directory advertisements are screened to the premise group. Pacific has determined that these types of accounts are more effectively serviced by personal contact for a variety of reasons, including design of the ad, opportunity to sell more advertising, and checking accuracy of relatively more complex ads.[3]

Premise sales are handled by advertising sales representatives (ASRs), a non-management position. The ASRs generally work out of field offices, set up from time to time in various localities for which a classified directory is then being compiled. Using the field office as their base, they contact their assigned customers in that locality. While working on directories for localities near an ASR's home, he or she may return home every evening. Much of the time, however, ASRs work out of field offices distant from their homes and may return home only on weekends.

The ASRs are supervised by advertising sales managers-premise ("premise managers" or "PMs") who are at the second level of management. Occasionally PMs accompany their ASRs on customer calls, or pursue local contacts themselves. More often, they perform their supervisory functions out of the various field offices. PMs, like the ASRs they supervise, are required to be away from home when working on directories for distant localities.

### II. *The Equal Pay Claims*

The female plaintiffs claim that while employed in the position of TSS they performed work substantially equal to that performed by male PMs and were denied the higher compensation received by PMs in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1)[4] and Title VII, 42 U.S.C. § 2000e. Plaintiff Grundy, a black male, brings a similar charge under Title VII and § 1981 asserting that he was denied equal pay because of his race.[5]

To establish a prima facie case of wage discrimination, plaintiffs must prove that Pacific paid members of protected groups less than males (or whites) earned for per-

---

**3.** Again, plaintiffs showed the existence of occasional exceptions when for reasons of efficiency or economy, premise accounts are contacted by telephone, either by premise sales representatives or, as a result of reassignment of accounts, by TSRs.

**4.** 29 U.S.C. § 206(d)(1) provides:

"(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions,

except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

**5.** The standards of the Equal Pay Act are applicable to charges of sex or race based discrimination in compensation under Title VII and § 1981. 42 U.S.C. § 2000e–2(h); *DiSalvo v. Chamber of Commerce,* 568 F.2d 593 (8th Cir. 1977); *Schultz v. Wheaton Glass Co.,* 421 F.2d 259 (3rd Cir. 1970); *Cf., Sabol v. Snyder,* 524 F.2d 1009 (10th Cir. 1975).

forming substantially equal work measured in terms of skill, effort, and responsibility. *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Schultz v. Wheaton Glass,* 421 F.2d 259 (3rd Cir. 1970), *cert. den.,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). The regulations and cases make it clear that it is actual job content, not job titles or descriptions, which is controlling. 29 C.F.R. § 800.121; *Brennan v. Victoria Bank & Trust Co.,* 493 F.2d 896 (5th Cir. 1974).

■ It is undisputed that PMs receive higher wages than TSSs. It is also undisputed that the two positions are similar in many respects. First, both positions are in management (TSSs are at the first level, PMs are at the second level); managerial skills are therefore needed for both jobs. Second, both positions are in the Directory Department and involve the sale of basically similar products, *i. e.,* directory advertising. Finally, because of the similarity of the product, the training manuals, business forms and other publications used by PMs and TSSs are the same.

These similarities, however, are not sufficient to overcome the marked difference in job content, namely that the PM position requires extensive travel and absence from home. First, PMs travel in the normal course of the business day to accompany their crews on customer visits, to attend community business meetings, and to visit various field offices to plan and coordinate sales campaigns. Second, PMs, when supervising directory sales campaigns in distant localities, are required to live away from home during the week. Plaintiffs' own evidence indicates that up to 50% of a PM's time over a two year period may be spent working in various localities distant from the San Francisco area. In contrast, the TSSs always work out of the same offices in San Francisco and do not travel in the normal course of the business day.

Plaintiffs have sought to prove their case by evidence establishing the existence of many similarities in the content of the two positions.[6] Plaintiffs did not show, however, that the travel requirement unique to the PM position was an inconsequential element of its actual job content. Their argument that travel by PMs in the "field" was comparable to "field" work done by TSSs, when they intercepted telephone sales communications in the office, is not convincing. Further, plaintiffs' own expert testified that the necessity to travel is a significant consideration in career choice. Thus, plaintiffs have failed to establish a prima facie case of substantial equality of the two positions.

■ Inasmuch as the work performed in the two positions has not been shown to be substantially equal in content, it is not necessary to make a comparison of skill, effort and responsibility. See, *Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164 (3rd Cir. 1977); *Hodgson v. Golden Isles Convalescent Homes, Inc.,* 468 F.2d 1256 (5th Cir. 1972); *Usery v. Richman,* 558 F.2d 1318 (8th Cir. 1977); 29 C.F.R. §§ 800.120, 800.-121. The evidence shows, however, that the positions also differ substantially in respect of effort and responsibility required.[7]

"Effort" is measured by the amount of physical and mental exertion needed for the performance of a job. 29 C.F.R. § 800.127. "Responsibility" reflects the degree of

---

6. In this connection, plaintiffs laid stress on the similarity of Pacific's job descriptions for the two positions. There is no room for dispute, however, that for the reasons discussed in the text, the conditions under which the two jobs are performed (*i. e.,* absence from home) are substantially different.

7. Equal skill is the third statutory consideration. 29 C.F.R. § 800.125 defines "skill" in terms of experience, training, ability, and education. The evidence showed that training provided to TSSs and PMs is substantially the

same. Experience differed somewhat in that most PMs had previously worked in the field as ASRs but Pacific did not argue that this experience was necessary to satisfactory performance of the PM job. The two jobs do involve somewhat different interpersonal skills. The TSS job requires close contact with subordinates on a daily basis while the PM supervises his crew, who are out making premise visits, less directly. The Court cannot conclude, however, that the degree of management skill required is greater in the PM position.

accountability required in the performance of a job. 29 C.F.R. § 800.129. In this case, involving a comparison of managerial jobs, these two factors are closely related; the greater the responsibility imposed, the greater the exertion necessary to discharge it.

The evidence shows that the premise sales group, and therefore the PMs, are responsible for a significantly more valuable segment of the Directory sales market than the telephone sales group, i. e., the larger, higher revenue accounts. In addition, PMs are responsible for expense accounting for themselves and their ASRs; they validate vouchers for travel and living expenses, a function not performed by TSSs. The resulting differences in revenue responsibility and financial accountability are indicative of a different and greater degree of responsibility imposed on and effort required of PMs. See *Usery v. Richman,* 558 F.2d 1318 (8th Cir. 1977); *Hodgson v. Robert Hall Clothes, Inc.,* 473 F.2d 589 (3rd Cir. 1973), *cert. den.,* 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85 (1973); *Hodgson v. Bank of Victoria,* 446 F.2d 47 (5th Cir. 1971).

In addition, PMs perform office management duties while working out of field offices. They are responsible for their crews while away from home on a twenty-four hour basis. They are in direct personal contact with members of the public as agents of Pacific. These additional duties, none of which is normally performed by TSSs, combine to make the PM position substantially more responsible and demanding than the TSS position and render them unequal under the Equal Pay Act standards.[8]

The female plaintiffs have not proven a violation of the Equal Pay Act and their claims must be dismissed. For the same reasons, their claim under Title VII and plaintiff Grundy's claim under Title VII and § 1981, to the extent they are based on discrimination in compensation, must also be dismissed.

III. *The Sex Based Discrimination in Promotion Claims*

Plaintiffs have charged Pacific with violation of 42 U.S.C. § 2000e–2(a),[9] alleging that Pacific discriminated against women by refusing to hire them into premise sales, denying them opportunities to rotate or transfer into premise sales, and denying them opportunities for promotion.[10]

Section 706(e), 42 U.S.C. § 2000e–5(e), provides that a person aggrieved must file a charge of discrimination within one hundred and eighty days of the occurrence of an alleged unlawful employment practice.[11]

---

**8.** In light of the conclusion that plaintiffs have not made out a prima facie case of wage discrimination, it is not necessary to consider the validity of Pacific's Job Evaluation Plan.

**9.** 42 U.S.C. § 2000e–2(a) provides:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

**10.** No first (i. e., the lowest) level management position exists in the premise group. Thus plaintiffs, at first level management, could transfer into premise sales only by demotion to the non-management ASR position or promotion to the second level management PM position.

**11.** 42 U.S.C. § 2000e–5(e) provides in part:

"(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceed-

Each plaintiff must comply with this requirement in order to be able to maintain an action on his or her particular claim.[12] *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 98 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Inda v. United Airlines, Inc.,* 565 F.2d 554 (9th Cir. 1977).

■ To the extent plaintiffs complain about their initial employment in telephone sales as opposed to premise sales, their claims are time barred because they were not filed within 180 days of their employment. *United Air Lines, Inc. v. Evans,* above; *Cates v. Trans World Airways, Inc.,* 561 F.2d 1064 (2nd Cir. 1977); *DeGraffenreid v. Gen. Motors Assembly Division,* 558 F.2d 480 (8th Cir. 1977).

■ Plaintiffs also complain of rules or policies which allegedly restricted their subsequent transfer into premise sales, but there is no evidence of the existence or operation of such a rule or policy within 180 days of the filing of their charges. The evidence showed that since January 1973, Pacific maintained an "Upgrade and Transfer Plan" which gave management employees preference for transfer into non-management positions. Thus plaintiffs, as TSSs in first level management positions, could transfer into the non-management premise sales position. Except in the case of Rueben Grundy, which will be discussed separately below, there is no claim that plaintiffs suffered disparate treatment in the application of this rule. Plaintiffs Jassman,

Butler, Riley, Stader and Cochran testified that, having achieved a first level management position, they did not want to transfer into the non-management premise sales position, while plaintiffs Chapman, Rookard and Swinford, upon their request, were transferred. In the absence of evidence of discriminatory refusal to transfer women into telephone sales within 180 days of the filing of their respective charges, this claim of the female plaintiffs must be dismissed. See, *United Air Lines, Inc. v. Evans,* above.

The primary claim of discrimination asserted by the female plaintiffs at trial was that as TSSs, at first level management, they were not eligible for promotion to the second level PM position. Plaintiffs submitted undisputed statistical evidence creating at least an inference of discrimination against women in promotions and rotations to PM. Since 1965 only three women were employed in that position. Christine Iwamura was promoted in 1973, and Constance Stader and Shirley Fisher were rotated into the PM position in 1978.[13] The individual claims of discriminatory denial of promotion are addressed below.

### A. *Edna K. Riley*

■ Plaintiff Riley retired from Pacific in January 1974. She filed her initial charge of discrimination against Pacific with the EEOC on August 27, 1974, more than 180 days after her voluntary retirement. A charge is not timely filed if it is filed more than 180 days after the employ-

ings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the persons aggrieved within three hundred days after the alleged unlawful employment practice occurred, . . ."

**12.** The parties stipulated that all plaintiffs received Notice of Right to Sue letters from the EEOC, and it is undisputed that this action was commenced within the time permitted in 42 U.S.C. § 2000e–5.

**13.** Breakdown of PMs by Sex (1965–1977):

| YEAR | TOTAL | FEMALE | MALE |
|------|-------|--------|------|
| 1965 | 10 | 0 | 10 |
| 1966 | 20 | 0 | 20 |
| 1967 | 18 | 0 | 18 |
| 1968 | 22 | 0 | 22 |
| 1969 | 21 | 0 | 21 |
| 1970 | 22 | 0 | 22 |
| 1971 | 31 | 0 | 31 |
| 1972 | 32 | 0 | 32 |
| 1973 | 28 | 1 (C. Iwamura) | 27 |
| 1974 | 28 | 1 (C. Iwamura) | 27 |
| 1975 | 28 | 1 (C. Iwamura) | 27 |
| 1976 | 22 | 0 | 22 |
| 1977 | 19 | 0 | 19 |

It should be noted that plaintiffs have made no claims regarding discriminatory failure to promote into other second level management positions or discriminatory evaluation of plaintiffs' readiness for promotion to second level management positions. The record shows that of a total of 19 promotions to second level manage-

ment relationship has ended. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3rd Cir. 1975), *cert. den.,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir. 1975). Riley's charge was not filed within 180 days of the time when she left Pacific's employ which was the last possible date on which Pacific could have discriminated against her. This charge is time barred and the claim must be dismissed.

### B. *Leslie Jassman, Dolores Butler, and Judy Chapman*

Plaintiffs Jassman, Butler, and Chapman filed a joint charge of discrimination against Pacific with the EEOC on July 23, 1973. Butler and Jassman filed additional individual charges with the EEOC on September 21, 1973. All of the charges filed by these plaintiffs referred to alleged discrimination in compensation, benefits, and terms of employment. While plaintiffs' charges were pending before the EEOC, three individuals were promoted to premise manager.[14] The issue presented is whether plaintiffs' claims of discrimination in promotion may be entertained by the Court although not included in the EEOC charges.

■ The permissible scope of the judicial complaint is limited to claims the particular claimant has standing to raise and which are "like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569 (9th Cir. 1973). In addition, a private plaintiff may litigate allegations of discrimination which, although not stated in the original charge, were investigated by the EEOC, *i. e.,* grew out of the investigative process. *Gamble v. Birmingham Southern R. R. Co.,* 514 F.2d 678 (5th Cir. 1975);

*Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184 (D.Md.1977) (dicta).

When determining the scope of a judicial complaint, courts have focused on two competing policies. The first is that Title VII is a remedial statute which must be liberally construed in favor of victims of discrimination. The second is that plaintiffs must not be permitted to frustrate the goals of informal administrative investigation and conciliation which may lead to voluntary compliance. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970); *Hubbard v. Rubbermaid, Inc.,* above.

■ The charges at issue refer to sex discrimination in compensation, benefits, and terms of employment. Plaintiffs argue that those charges support a claim for denial of promotional opportunity because the basis of the discrimination (sex) remains the same. In two recent cases the addition of a new type of discrimination was not permitted. See, *Hubbard v. Rubbermaid, Inc.,* above; *Kenneweg v. Hampton Township School District,* 438 F.Supp. 575 (W.D.Pa. 1977). In those cases, however, the evidence clearly showed that the EEOC did not investigate the claims of discrimination which the plaintiffs attempted to add.

In the instant case, defendant presented no evidence regarding the scope of the administrative investigation and conciliation effort or how this action has gone beyond permissible bounds.[15] See, *King v. Georgia Power,* 295 F.Supp. 943 (N.D.Ga.1978). In light of the policy disfavoring procedural barriers to the assertion of valid claims, we cannot conclude that the claims of these plaintiffs must be limited to charges of discrimination in compensation. Their claims of discretionary denial of promotion are addressed in the following paragraphs.

ment positions in the Directory Department since 1971, 15 have gone to women.

**14.** Christine Iwamura was promoted November 15, 1973; Richard Hartman was promoted February 1, 1974; Rile Benford was promoted July 1, 1974.

**15.** The evidence showed that at least with regard to Chapman, Pacific may have engaged in a conciliation attempt of the promotion claim. Chapman accepted a temporary transfer to the ASR position to qualify for promotion to PM, expressly stating that her acceptance of the ASR position was not in compromise of her EEOC charges.

### 1. Leslie Jassman

■ Plaintiff Jassman was first employed by Pacific on March 4, 1968. She was promoted to TSS on June 15, 1972. She filed a discrimination charge with the EEOC on July 23 and September 21, 1973. She was demoted to non-management on January 8, 1974, and began a voluntary leave of absence on January 9, 1974. She has not resumed employment with Pacific.

Jassman did not prove that she was qualified for promotion to second level management at the time the disputed promotions took place. None of her evaluations suggested that she was ready for promotion to second level and there was no evidence of discrimination in evaluation. See, *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1976) (plaintiffs burden to show basic qualifications). Even if she had been qualified, no inference of sex based discrimination can be drawn regarding the promotion on January 15, 1973, of Christine Iwamura, a female. At the time Richard Hartman was promoted on February 1, 1974, and Rile Benford was promoted on July 1, 1974, Jassman was on leave of absence.[16] Jassman has failed to make a prima facie case of discriminatory failure to promote. Her claim must be dismissed.

### 2. Dolores Butler

■ Plaintiff Butler was first employed by Pacific on August 15, 1960. She later resigned and was rehired on September 19, 1968. She was promoted to TSS on August 16, 1970. Butler filed a discrimination charge with the EEOC on July 23 and September 21, 1973. She began a leave of absence on January 7, 1974, which continued until April 21, 1974, when she received a requested transfer to a non-management position in Customer Operations in the Redding area.

Butler did not prove that she was qualified for promotion to second level management. None of her evaluations suggested that she was ready for promotion to second level and there was no evidence of discrimination in evaluation. *Cf., International Brotherhood of Teamsters v. United States*, above. Even if she had been qualified, no inference of sex based discrimination can be drawn regarding the promotion of another female, Christine Iwamura, on January 15, 1973. At the time Richard Hartman was promoted on February 1, 1974, Butler had begun a voluntary leave. At the time Rile Benford was promoted on July 1, 1974, Butler had voluntarily assumed a non-management position in another department.[17] Butler has failed to make a prima facie case of discriminatory failure to promote. Her claim must be dismissed.

### 3. Judy Chapman

■ Plaintiff Chapman was hired by Pacific as a TSR on April 12, 1963. On February 1, 1967, she was promoted to first level management. She became a TSS on July 16, 1967, from which position she rotated into various other first level management positions. On September 9, 1974, she transferred into the non-management premise sales position. She remained an ASR for nine months, until June 16, 1975, when she transferred back into first level management. Her charge of discrimination was filed with the EEOC on July 23, 1973.

It is undisputed that plaintiff Chapman had an outstanding record as a TSS and in her rotational assignments. She also performed well in the ASR position. An evaluation of her work done on August 16, 1973, stated that she was ready for promotion to second level management. Yet, Pacific failed to consider Chapman for promotion to the premise manager position at the time Richard Hartman was promoted on February 1, 1974, and at the time Rile Benford

---

**16.** Jassman was not promoted to first level management until June 15, 1972. Therefore she has no claim regarding the promotion of James Donnelly to second level management on November 16, 1971.

**17.** Butler has no claim regarding the promotion of James Donnelly on November 16, 1971, because she did not show that she was qualified for promotion at that time.

was promoted on July 1, 1974.[18] Pacific offered no explanation for its failure to consider Chapman for promotion during the period from 1973, when she became qualified for second level management, until 1976.[19]

Chapman has made a prima facie case of discriminatory failure to promote which Pacific has not attempted to rebut.[20] The Court must therefore conclude that Chapman has been denied promotional opportunities in violation of Title VII. See, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1972). Inasmuch as the issues of liability and damages have been bifurcated, further proceedings may be required to determine damages suffered by Chapman.

### C. *Constance Stader, Danya Rookard, Nancy Swinford and Joan Cochran*

Plaintiffs Stader, Rookard, Swinford, and Cochran each filed charges asserting discriminatory denial of promotion to PM from the TSS position within 180 days of the promotion to PM of a male ASR. Thus their charges relating to denial of promotional opportunity were timely and are addressed in the following paragraphs.

#### 1. *Constance Stader*

■ Plaintiff Stader was hired by Pacific as a Telephone Sales Representative in January 1963. She was promoted to TSS on April 16, 1964. On June 6, 1974, she filed a discrimination charge with the EEOC. On August 16, 1974, she was promoted to the second level of management as a Customer Service Office Manager; in January 1978, she was rotated into the premise manager position.

Stader testified that sometime in June 1974, the same month in which she filed her discrimination charge, she was asked whether she would accept promotion to premise sales manager. She declined the promotion on the ground that she had five children to care for and did not want a position which required travel. Stader's claim that Pacific discriminated against her is baseless and must be dismissed.

#### 2. *Nancy Gilmore Swinford*

■ Plaintiff Swinford was employed by Pacific in 1966 and became a TSR in 1971. She was promoted to TSS in November 1973. She filed a discrimination charge with the EEOC on June 6, 1974.

Swinford testified that she had no desire to join the premise group until 1976 when she applied for a transfer to the ASR position under the "Upgrade and Transfer Plan." She became an ASR in February 1976, a position which she still holds. She testified that she does not presently desire a promotion to premise manager in part because ASRs earn more than PMs. Because she preferred the ASR job and was not interested in promotion to PM, she cannot claim discrimination based on a failure to promote her to that position. Her claim must be dismissed.

#### 3. *Danya Rookard*

■ Plaintiff Rookard was hired by Pacific in February 1960. She resigned in 1963 and was rehired as a TSR in March 1970. On January 1, 1974, she was promoted to the TSS position. She filed a discrimination charge on June 6, 1974.

Rookard testified that she was interested in working in the premise group when she

18. Chapman's employment records indicate that she was transferred to the ASR position in 1974 so that she would be eligible for promotion to PM if an opening occurred while she was an ASR. This is additional evidence of disparate treatment of Chapman because Pacific claimed it withdrew the ASR experience requirement in 1973 and because there was no evidence that Pacific required all promotees to PM to go directly from the ranks of ASRs.

19. Chapman's name was submitted for consideration regarding a promotion for the first time in 1976.

20. Pacific introduced evidence indicating that Chapman experienced a medical problem restricting her ability to drive in 1975. Since this medical problem arose after the disputed promotions it is irrelevant on the issue of intent to discriminate regarding the promotions at issue, although it may have a bearing on damages.

returned to Pacific in 1970, but not knowing how to drive or owning an automobile, she did not apply for a premise position. In June 1974 (the same month in which she filed charges of discrimination), she requested transfer to the non-management ASR position. She assumed that position on December 18, 1975. She testified that she wished to remain an ASR and did not presently desire a promotion to PM. In the absence of evidence indicating that Rookard desired promotion to PM, her claim must be dismissed.

### 4. Joan Cochran

■ Plaintiff Cochran was hired as a TSR in 1963. She was promoted to first level management in 1967. In 1968 she was rotated into the TSS position. Except for several rotations she has remained a TSS. She filed a discrimination charge on September 23, 1974.

It is undisputed that Cochran has performed exceptionally well in the TSS position. She has been repeatedly cited for outstanding performance. An appraisal of her work completed on June 6, 1974, stated that she should be considered for promotion to second level management. Thus Cochran was qualified for promotion to a second level position. Further, it is undisputed that at least one vacancy in the premise manager position existed and was filled by a male within 180 days of the filing of Cochran's charge of discrimination.[21]

Pacific offered no explanation for its apparent failure to consider Cochran for promotion during the period from June 1974, when she had been found qualified for second level management until 1976.[22] In the past, promotions to premise manager were restricted to individuals who had been employed in the ASR position. Pacific does not claim, however, that Cochran was not promoted because she had not been an ASR. On the contrary, it concedes that prior ASR experience was not considered crucial to successful performance as PM and has not been a requirement since 1973.

Cochran has established a prima facie case of discrimination which Pacific has not attempted to rebut. The Court must therefore conclude that Cochran has been denied promotional opportunities in violation of Title VII. See, *McDonnell Douglas Corp. v. Green,* above. Inasmuch as the issues of liability and damages have been bifurcated, further proceedings may be required to determine damages suffered by Cochran.

### IV. The Race Based Discrimination in Transfer Claim

■ Plaintiff Grundy, a black male, charges discrimination under Title VII and the Civil Rights Act of 1866, 42 U.S.C. § 1981. His claim under § 1981 is not limited by his EEOC charge, and the 180 day filing limitation does not apply.[23] *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.,* 522 F.2d 1235 (7th Cir. 1975), *cert. den.,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). However, the standards of proof in an individual case are the same under § 1981 and Title VII. See, *Sabol v. Snyder,* 524 F.2d 1009 (10th Cir. 1975), where the court followed *McDonnell Douglas,* above. Applying those standards in the instant

---

**21.** Rile Benford, a black male, was promoted to premise manager on July 1, 1974. It is perhaps ironic, if not regrettable, that Cochran's discrimination claim must be bottomed upon the promotion of Benford, a black male, to the position she desired. This circumstance makes it doubtful that Pacific harbored the discriminatory intent proscribed by Title VII. Nevertheless, once plaintiff has proved that she was rejected for a position for which she was qualified in favor of a male, the burden of explaining the decision shifts to defendant. Pacific may well have had reasons for promoting Benford sufficient to rebut Cochran's prima facie case.

If it did, it chose not to make them of record. This Court may not deny Cochran's claim on the strength of speculation concerning those reasons.

**22.** Cochran's name was submitted for consideration regarding a promotion to second level for the first time in 1976.

**23.** It is undisputed that Grundy filed charges with the EEOC on June 6, 1974. Because he did not submit a copy of his charge, his claims will be treated as though brought solely under § 1981.

case, the Court concludes that Grundy has failed to prove that he suffered discriminatory treatment.

Plaintiff Grundy was hired as a TSR on May 23, 1972. He was promoted to first level management as a TSS on June 1, 1973, and was rotated into a number of other first level positions. He presented a written request for a transfer to the ASR position on December 17, 1974. On April 11, 1976, Grundy was transferred to that position which he presently holds.

Grundy has not made out a prima facie case of discrimination based on his initial hiring as a TSR, rather than an ASR, since he has not shown that any ASR openings existed when he was hired. See, *McDonnell Douglas,* above. The evidence shows that since January 1972 all vacancies in the premise group were filled by transfers of incumbent employees. This was due in part to the popularity of the ASR job which, although a non-management position, offered an opportunity to earn more in salary and commissions than even second level managers received.

Grundy has also failed to establish a prima facie case based on failure to promote him to PM because he testified that until December 1977 he was interested only in the better paying non-management ASR position. Inasmuch as he did not want the PM position, he has no claim based on failure to promote.

The facts are sufficient, however, to establish a prima facie case of disparate treatment based on Pacific's delay in transferring Grundy after he requested the ASR position. Grundy testified that he orally requested the transfer as early as 1973; it is undisputed that on December 17, 1974, he submitted a written request for demotion from first level management to the non-management ASR position. Pursuant to the "Upgrade and Transfer Plan" (dis-

cussed above), Grundy was entitled to preferential consideration for transfer. Yet he was not transferred until April 11, 1976, after a number of other persons had been transferred into the ASR position.

Pacific rebutted the inference of discrimination which was thereby raised by showing that in June 1975, Grundy requested a transfer into the Marketing Department. This transfer, which involved an upgrade in rank although it was within the first level of management band, was granted and Grundy was trained for eight weeks in marketing. While Grundy was in the Marketing Department his superior in the Directory Department, not having been otherwise informed, assumed that he was no longer interested in the ASR position. When in 1976, Grundy informed the Directory Department that he still desired the transfer to the ASR position, he was given the next opening which occurred in April 1976.

Grundy offered no evidence to prove that the stated reason for the delay was pretextual.[24] Having failed to prove discrimination against him, Grundy's claims under both Title VII and § 1981 must be dismissed.

## V. *Conclusion*

For the reasons stated, the Court finds and concludes that as to plaintiffs Butler, Jassman, Riley, Rookard, Stader, Swinford and Grundy, defendant Pacific did not violate Title VII, 42 U.S.C. § 2000e *et seq.,* the Equal Pay Act, 29 U.S.C. § 206(d) or the Civil Rights Act of 1866, 42 U.S.C. § 1981. As to plaintiffs Cochran and Chapman, defendant Pacific did not violate the Equal Pay Act, 29 U.S.C. § 206(d).

The Court further finds and concludes that as to plaintiffs Cochran and Chapman, defendant Pacific violated Title VII, 42 U.S.C. § 2000e–2(a). Inasmuch as the is-

---

24. The statistical evidence presented by plaintiff showed that blacks represented from three to six percent of all ASRs during the 1973–1977 period. In the light of the totality of the evidence concerning Pacific's treatment of Grundy, the Court finds that any inference of discrimination arising from the statistics is insuffi-

cient to overcome Pacific's rebuttal of Grundy's prima facie case. See, *King v. Yellow Freight System, Inc.,* 523 F.2d 879 (8th Cir. 1975). In this connection, the Court notes Grundy's testimony that Pacific promoted him faster than he had anticipated.

sues of liability and damages have been bifurcated, further proceedings may be required to determine damages.

The parties are directed to confer concerning what if any further proceedings may be required.

The matter is set for a status conference on June 9, 1978, at 3:30 P.M.

IT IS SO ORDERED.